## SPRAIGUE & Others *v.* THOMPSON.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

Argued April 5, 1886.—Decided April 26, 1886.

Section 1512 of the code of Georgia which provides that "any person, master, or commander of a ship or vessel bearing toward any of the ports or harbors of this State, except coasters in this State, and between the ports of this State and those of South Carolina, and between the ports of this State and those of Florida, who refuses to receive a pilot on board, shall be liable, on his arrival in such port in this State, to pay the first pilot who may have offered his services outside the bar, and exhibited his license as a pilot, if demanded by the master, the full rates of pilotage established by law for such vessel," conflicts with the Constitution of the United States, and is annulled and abrogated by the provision in Rev. Stat. § 4237, that "no regulations or provisions shall be adopted by any State which shall make any discrimination in the rate of pilotage or half-pilotage between vessels sailing between the ports of one State and vessels sailing between the ports of different States, or any discrimination against vessels propelled in whole or in part by steam, or against national vessels

Opinion of the Court.

of the United States ; and all existing regulations or provisions making any such discrimination are annulled and abrogated."

A vessel owned in Philadelphia and running between Philadelphia and Savannah was licensed as a coastwise steam vessel. The master held a license as pilot under Title LII. Rev. Stat. The owners employed S (a Savannah pilot also licensed under the laws of the United States to conduct vessels over Tybee Bar and up the Savannah River), as their regular pilot to conduct the vessel through those waters, with pay from the time of leaving Philadelphia. T, licensed as a pilot under the laws of Georgia, spoke the vessel off Cape Romain, before any other pilot spoke it, and tendered his services to conduct it over the bar and up the river, and they were refused. Subsequently S met the vessel under the general arrangement and piloted it over the bar and up the river. *Held :* That pursuant to the provisions of Rev. Stat. §§ 4401, 4444, the vessel, both when T tendered his services, and when it passed over the bar and up the river, was under the lawful control and direction of a pilot licensed under the laws of the United States, and could not be required to take a pilot licensed under the provisions of the laws of Georgia.

If a clause in a statute which violates the Constitution cannot be rejected without causing the act to enact what the legislature never intended, the whole statute must fall.

The case is stated in the opinion of the court.

*Mr. Henry B. Tompkins* for plaintiffs in error.

No appearance for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This was an action at law, begun by the defendant in error, in a magistrate's court in Chatham County, Georgia, against the plaintiffs in error, to recover $93.16, claimed to be due under the pilotage laws of Georgia, for inward pilotage on account of the steamer Saxon, of which the defendants were owners, the vessel having been spoken by the pilot while she was bearing toward the port of Savannah, and his services offered outside of Tybee Bar, and refused, the vessel having arrived in port piloted by another Savannah pilot, who spoke her and entered on the discharge of his duties as pilot on the same day, but subsequently to the tender by the plaintiff below of his services.

There was a judgment in favor of the plaintiff below in the

magistrate's court for the amount claimed, which was reversed on appeal by the Superior Court of Chatham County, which judgment was in its turn reversed by the Supreme Court of Georgia, which ordered judgment to be entered for the plaintiff below. To reverse this judgment this writ of error is brought.

The case was submitted and decided upon an agreed statement of facts, as follows:

"It is agreed between the parties to the above-entitled cause that the same shall be tried on appeal in the Superior Court of Chatham County, on the following state of facts before the court, without a jury: That the steamship Saxon is a licensed coastwise steam vessel engaged in the trade between Philadelphia and Savannah, and belongs to Spraigue, Soullee & Co.; that on the 9th day of August, 1881, she was engaged in a voyage from Philadelphia, Pennsylvania, to Savannah, Georgia, and that S. W. Snow was her master; that said master was duly licensed, under title 52 of the Revised Statutes of the U. S., as master of a steam vessel, and as a pilot also, but that his certificate as pilot did not include Tybee Bar and Savannah River, but that his certificate was for the Atlantic coast, and that his certificate as master and pilot was issued last November.

"That said steamship 'Saxon' was spoken by plaintiff off Cape Romain on the 9th day of August, 1881, and his services were tendered to said master of said steamship 'Saxon' as a pilot for Savannah River and Tybee Bar, and that at the time his said services were offered there was no pilot for Tybee Bar or Savannah River on board said steamship, and that said plaintiff was the first pilot who spoke said vessel on her said trip to Savannah. It was further admitted by counsel at the hearing that Philadelphia was the home port of said steamer 'Saxon,' and that the captains and masters of the Ocean Steamship Company steamers, whose home port is Savannah, have each a license from the United States authorities at Savannah to pilot their vessels up and down the Savannah River over and from the bar to the city; that said pilot was duly commissioned by the commissioners of pilotage for the Savannah River and Tybee Bar, and was also duly commis-

sioned by the U. S. inspectors to conduct steam vessels over
Tybee Bar and up Savannah River and within that limit; that
Thompson went out to meet the 'Saxon,' being advised of her
departure from Philadelphia, and his services were refused;
that the defendant had procured the services of Walter W.
Smith, a pilot who was duly licensed for the Savannah River
and Tybee Bar by the commissioners of pilotage, and who was
also duly licensed by the U. S. to conduct steam vessels over
Tybee Bar and up Savannah River, and had notified the
captain of said steamship 'Saxon' to stop at the Martin's In-
dustry lightship and take said Walter W. Smith on board to
pilot said steamship over Tybee Bar and up Savannah River;
that said Walter W. Smith was employed as the regular pilot of
steamer 'Saxon,' and was under pay from [the] time said vessel
left Philadelphia; that said pilot was taken on board said steam-
ship on [the] tenth day of August off the Martin's Industry
lightship, and he piloted the said vessel to the city of Savannah
and has continued in the employ of said vessel from that time
until the present time as pilot. That Cape Romain is on the
South Carolina coast north of Charleston, and that Martin's In-
dustry lightship is north of Tybee Bar and off the South Caro-
lina coast. That Walter W. Smith was in Savannah when the
'Saxon' left Philadelphia, and was not piloting the 'Saxon'
when she was spoken by the plaintiff, but met her afterwards
and was taken. That said steamship 'Saxon' drew seventeen
feet six inches of water, and that according to rates of pilotage
for Tybee Bar and river of Savannah $93.17 was a proper
charge for piloting a vessel of such draft up to Savannah
City."

The claim of the defendant in error for pilotage, arising upon
the foregoing case, is based on § 1512 of the Code of Georgia,
which is as follows: .

"Any person, master, or commander of a ship or vessel
bearing toward any of the ports or harbors of this State, ex-
cept coasters in this State, and between the ports of this State
and those of South Carolina, and between the ports of this
State and those of Florida, who refuses to receive a pilot
on board, shall be liable, on his arrival in such port in this

State, to pay the first pilot who may have offered his services outside the bar, and exhibited his license as a pilot, if demanded by the master, the full rates of pilotage established by law for such vessel."

And the claim is undoubtedly well founded, if this provision of the State law is enforceable consistently with the Constitution of the United States and the acts of Congress on the same subject, passed in pursuance thereof.

It is, therefore, contended by the plaintiffs in error, that this provision of the Georgia Code is invalid, on the ground that it is inconsistent with the laws of the United States regulating the same subject.

Section 4235 Rev. Stat. enacts, that, "Until further provision is made by Congress, all pilots in the bays, inlets, rivers, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the States respectively wherein such pilots may be, or with such laws as the States may respectively enact for the purpose."

But it is also enacted by § 4237 Rev. Stat. that "No regulations or provisions shall be adopted by any State which shall make any discrimination in the rate of pilotage or half pilotage between vessels sailing between the ports of one State and vessels sailing between the ports of different States, or any discrimination against vessels propelled in whole or in part by steam, or against national vessels of the United States; and all existing regulations or provisions making any such discrimination are annulled and abrogated."

The section of the Georgia Code, above quoted, does contain such discriminations as are prohibited by § 4237 Rev. Stat. It excepts from its operation "coasters in this State," and " between the ports of this State and those of South Carolina," and "between the ports of this State and those of Florida."

It was held, however, by the Supreme Court of Georgia, in the case now before us, that so much of the section as makes these illegal exceptions may be disregarded, so that the rest of the section as thus read may stand, upon the principle that a separable part of a statute, which is unconstitutional, may be rejected, and the remainder preserved and enforced.   But the

insuperable difficulty with the application of that principle of construction to the present instance is, that by rejecting the exceptions intended by the legislature of Georgia the statute is made to enact what confessedly the legislature never meant. It confers upon the statute a positive operation beyond the legislative intent, and beyond what any one can say it would have enacted in view of the illegality of the exceptions. We are, therefore, constrained to hold that the provisions of § 1512 of the Code of Georgia cannot be separated so as to reject the unconstitutional exceptions merely, and that the whole section must be treated as annulled and abrogated by § 4237 of the Revised Statutes.

We are also of opinion that the claim for pilotage in the present case is defeated by other provisions of the Revised Statutes. Section 4401 provides that " All coastwise sea-going vessels, and vessels navigating the great lakes, shall be subject to the navigation laws of the United States, when navigating within the jurisdiction thereof; and all vessels, propelled in whole or in part by steam, and navigating as aforesaid, shall be subject to all rules and regulations established in pursuance of law for the government of steam vessels in passing, as provided by this Title; and every coastwise sea-going steam vessel subject to the navigation laws of the United States and to the rules and regulations aforesaid, not sailing under register, shall, when under way, except on the high seas, be under the control and direction of pilots licensed by the inspectors of steamboats."

And § 4444 is as follows :

" No State or municipal government shall impose upon pilots of steam vessels any obligation to procure a State or other license in addition to that issued by the United States, or any other regulation which will impede such pilots in the performance of the duties required by this Title; nor shall any pilot-charges be levied by any such authority upon any steamer piloted as provided by this Title; and in no case shall the fees charged for the pilotage of any steam vessel exceed the customary or legally established rates in the State where the same is performed. Nothing in this Title shall be construed to annul or affect any regulation established by the laws of any State

requiring vessels entering or leaving a port in any such State, other than coastwise steam vessels, to take a pilot duly licensed or authorized by the laws of such State, or of a State situate upon the waters of such State."

According to the agreed case the Saxon was a coastwise sea-going steam vessel, was not sailing under register, and, at the time when the defendant in error tendered his services, and, subsequently, when she passed up the river into Savannah, was under the control and direction of a pilot licensed by the United States inspectors of steamboats. She was, therefore, at the time, piloted as provided by that title of the statute, so that she was lawfully exempt from any pilot charges levied by any State or municipal government. The section expressly excepts coastwise steam vessels from the regulations established by the laws of any State requiring vessels entering or leaving a port, in any such State, to take a pilot duly licensed or authorized by the laws of any such State, or of a State situate upon the waters of such State. The owners of the Saxon were, there-fore, at liberty to employ any pilot, licensed under the author-ity of the United States for the particular service in which he was engaged, without regard to the provisions of the Georgia Code requiring it to accept the services of the pilot first ten-dered, or, in case of refusal, to pay pilotage therefor. The en-gagement of the services of the pilot actually taken, by previous contract, was equivalent to keeping him on board for that pur-pose during the whole voyage, as he was, in fact, under pay from its commencement; and had he been actually on board at the time the defendant in error tendered himself as pilot, we think the right of the vessel to reject the offer could not have been reasonably questioned.

For these reasons the judgment of the Supreme Court of Georgia is

*Reversed, and the cause is remanded with instructions to take further proceedings therein according to law and in con-formity with this opinion.*