## THE ALAMEDA, etc., *v.* NEAL.

*(Circuit Court, N. D. California. August 1, 1887.)*

PILOTS—HALF PILOTAGE—DISCRIMINATION—STATUTES.

Section 2466, Pol. Code Cal., providing rates for pilotage and half pilotage to be charged vessels entering the port of San Francisco, is not so affected by the joint operation of section 2468, Pol. Code Cal., exempting vessels sailing between San Francisco and ports in Oregon, Washington, and Alaska from half pilotage, and Rev. St. U. S. § 4237 forbidding, discrimination in rates for pilotage and half pilotage, as to exempt vessels sailing from a foreign port to San Francisco from liability for half pilotage, but section 2466 will prevail, and section 2468 fail, so far as its provisions come within the United States statute forbidding discrimination in pilotage rates.

Appeal from District Court, N. D. California. See 31 Fed. Rep. 366.

*Milton Andros* and *Page & Eels,* for appellant.

*P. D. Wigginton* and *Lloyd & Wood,* for appellee.

FIELD, Justice. The libelant is a licensed pilot for the harbor of San Francisco, under the laws of California and of the United States, and on the nineteenth of March, 1887, within the cruising grounds of pilots, and outside of the bar of the harbor, he spoke the steam-ship Alameda, an American vessel, coming from the Hawaiian islands to San Francisco, and tendered to the master of the vessel his services as pilot. The services were declined, and the steam-ship entered the harbor without having on board any licensed pilot. The pilot thereupon demanded of the master half pilotage, under the laws of the state. Its payment being refused, he filed his libel against the vessel in the district court of the United States for the amount, namely, $83.78. The Oceanic Steam-ship Company appeared as claimant, and filed a peremptory exception to the libel, on the ground that the laws of the state allowing half pilotage were, by the provisions of section 4237, Rev. St. U. S., rendered inoperative and

void. That section declares that "no regulations or provisions shall be adopted by any state which shall make any discrimination in the rate of pilotage or half pilotage between vessels sailing between the ports of one state and vessels sailing between the ports of different states, or any discrimination against vessels propelled in whole or in part by steam, or against national vessels of the United States; and all existing regulations or provisions making any such discrimination are annulled and abrogated."

The laws of the state bearing upon the question are found in sections 2466 and 2468, Pol. Code. Section 2466 provides that "the following shall be the rates of pilotage into or out of the harbor of San Francisco: All vessels under five hundred tons, $5 per foot draft; all vessels over five hundred tons, five dollars per foot draft, and four cents per ton for each and every ton registered measurement. When a vessel is spoken inward or outward bound, and the services of a pilot are declined, one-half of the above rates shall be paid. In all cases where inward-bound vessels are not spoken until inside of the bar, the rates of pilotage and half pilotage above provided shall be reduced 50 per cent. Vessels engaged in the whaling or fishing trade shall be exempt from all pilotage, except where a pilot is actually employed." Section 2468 provides that "all vessels coasting between San Francisco and any port in Oregon, or Washington or Alaska territories, and all vessels coasting between the ports of this state, are exempt from all charges for pilotage unless a pilot be actually employed."

The district court overruled the exception of the claimant to the libel, and the case is brought to the circuit court on appeal.

The contention of the claimant and appellant is that the exemption, under section 2468, Pol. Code, of certain coasting vessels from the charge of half pilotage, has the effect of bringing the whole system of regulations for half pilotage prescribed by section 2466 within the inhibition of the federal statute, though the vessels against which it is made chargeable by that section come from a foreign port. If such be the effect of the exemption of the coasting vessels, the whole pilot system will be seriously impaired, and its usefulness greatly lessened. The allowance of half pilotage, when the services of a pilot have been tendered and refused, has always been deemed an essential means of establishing and supporting an efficient body of port pilots.

As said by the supreme court of the United States, in a case in which I had the honor to be its organ, nearly a quarter of a century ago, speaking of regulations respecting pilots of the harbor of San Francisco, and of the allowance to them of half pilotage when their services were tendered and declined:

"The object of the regulations established by the statute was to create a body of hardy and skillful seamen, thoroughly acquainted with the harbor, to pilot vessels seeking to enter or depart from the port, and thus give security to life and property exposed to the dangers of a difficult navigation. This object would be in a great degree defeated if the selection of a pilot were left to the option of the master of the vessel, or the exertions of the pilot to reach

the vessel, in order to tender his services, were without any remuneration. The experience of all commercial states has shown the necessity, in order to create and maintain an efficient class of pilots, of providing compensation, not only when the services tendered are accepted by the master of the vessel, but also when they are declined. If the services are accepted, a contract is created between the master or owner of the vessel and the pilot; the terms of which, it is true, are fixed by the statute, but the transaction is not less a contract on that account. If the services tendered are declined, the half fees allowed are by way of compensation for the exertions and labor made by the pilot, and the expenses and risks incurred by him in placing himself in a position to render the services, which, in the majority of cases, would be required." *Steam-Ship Co.* v. *Joliffe*, 2 Wall. 456.

The position of the claimant and appellant is that this system, so far as it provides for half pilotage, has been abolished with respect to *all* vessels, by reason of the discriminations adopted with respect to coasting vessels. I am not able to accept this conclusion. It is true that section 2468, Pol. Code, makes discriminations within the prohibition of the federal statute. It exempts from charges for pilotage, unless a pilot is actually employed, vessels coasting between San Francisco and a port in Oregon, or in Washington or in Alaska territories, but it does not exempt from such charges vessels coasting between any other port of California and a port in that state or in those territories. It also exempts from such charges vessels coasting between ports of the state, and does not exempt from the charges vessels sailing between those ports and ports of other states. But it does not seem to me to be a reasonable inference that because an exemption was thus made by the legislature in favor of certain coasting vessels between the ports of the state and between its principal port and ports on the coast in Oregon, Washington, and Alaska, that it would not have allowed half pilotage in any case, even where the vessel to which the services of a pilot were tendered was coming from a foreign port, had not this exemption of coasting vessels from such charges been allowed. There is no such necessary connection between the two things as would justify the inference that the charge would not have been allowed in the one case, if the exemption were not permitted in the other.

The federal statute prohibits regulations by any state making a discrimination in the rates of pilotage or half pilotage between certain vessels engaged in the coasting trade, or against vessels propelled in whole or in part by steam, or against national vessels; and it abrogates all existing regulations thus discriminating. But it has no further operation; it in no respect impinges upon any other regulations, or touches the general system of pilotage or half pilotage, with respect to vessels engaged in foreign commerce. The prohibited discrimination, if previously made, is abrogated; if subsequently made, it is inoperative to defeat regulations otherwise valid.

Discriminations in rates of pilotage in favor of certain vessels engaged in the coasting trade are, by their terms, necessarily limited, and could therefore never have been designed to affect the pilotage or half pilotage of vessels engaged in foreign commerce. The discrimination as to coasting vessels being invalid, section 2466 stands, as respects other vessels,

in full force. Whether the coasting vessels are, by the invalidity of the discrimination as to them, brought under the operation of section 2466, is a question not necessary to determine. It may be said that the discrimination indicates the intent of the legislature that such vessels should be exempt from half pilotage; but it may be also said that it is to be presumed that the legislature only intended the discrimination in case it could be lawfully made. We should hesitate to attribute to it a designed disregard of the federal statute. But as said above, the question is not before us for decision. The case is essentially different from *Spraigue* v. *Thompson*, 118 U. S. 90, 6 Sup. Ct. Rep. 988. There it was sought to charge a coasting vessel which was excepted from pilot charges by the Code of Georgia; here it is sought to except from such charges a vessel engaged in foreign commerce because of an exemption by the Code of California in favor of certain coasting vessels,—an exemption contained in an independent section.

I am of opinion that the decision of the district court was correct. It is therefore affirmed.