## Wytheville.

DARDEN, PILOT v. THOMPSON, MASTER OF SCHOONER "WILLIAM
NEELY."

June 18, 1903.

1. PILOT LAWS—*Discriminations—Code, Sections 1965 and 1969—Revised Statutes United States, Section 4237.*—By the pilot laws of this State (Code, sections 1965 and 1969) all vessels, except coastwise vessels with a pilot license, inward bound from the sea to certain enumerated points in the State, and all vessels outward bound from such points to the sea are subjected to certain regulations and rates. All such vessels are subject to the same regulations, and, under the same circumstances and conditions, are required to pay the same fees. These statutes make no such discrimination as is prohibited by section 4237 of Revised Statutes of the United States.

2. PILOTAGE—*State Laws—Compulsory System for Sea-Going Vessels—Inland Vessels—Discrimination—Revised Statutes, Section 4237.*—A State may establish a compulsory system of pilotage as to vessels coming from the sea to her inland ports, or going from such ports to the sea, without establishing such a system as to vessels trading between her inland ports, or between her inland ports and the ports of another State, which can be reached without going to sea, and such discrimination is not forbidden by section 4237, Revised Statutes of the United States. Local peculiarities and necessities can be best provided for by the legislation of the States respectively, and such has been the view of the Federal government.

3. PILOTAGE—*Inland Vessels—Discriminations—Revised Statutes, Section 4237.*—Section 1990 of the Code, exempting from pilotage all vessels bound to or from any point on the Potomac river is not in conflict with section 4237, Revised Statutes of the United States, prohibiting "any discrimination in rates of pilotage, or half pilotage, between vessels sailing between the ports of one State and vessels sailing between the ports of different States." All vessels bound

to or from any point on the Potomac river are exempted by section 1990, no matter to what points they are bound, or from what points they may come. There is no discrimination.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, rendered February 12, 1903, in an action of assumpsit, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*R. C. Marshall, Brooke & Elliott* and *Daniel & Harper*, for the plaintiff in error.

*Hughes & Little*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff in error, who was the plaintiff in the trial court, filed his declaration, which was afterwards amended, in which he averred that he was a licensed pilot under the laws of this State; that on the 1st day of August, 1902, off Cape Henry, he offered his services as pilot to the defendant, the master of the Wm. Neely, a schooner, belonging to residents and citizens of Maine, and engaged in coastwise trade between Virginia and New England (and not holding a coastwise pilot license), which was making her way at that time from the sea near Cape Henry to Norfolk, Va., whither she was bound; that his services were declined; that demand was then and there made upon the defendant for their value, to-wit, $87.75, which demand was refused by the defendant, who refused and still refuses to pay or deposit the same as required by the statute in such case made and provided; and that by reason of the premises a right of action has accrued to the plaintiff to recover the said sum.

The defendant's demurrer to the declaration was sustained, and final judgment rendered in his favor. To that judgment this writ of error was awarded.

Whilst a number of grounds of demurrer were assigned, only one was considered by the trial court, and only one is relied on here, and that is that the pilot laws of Virginia, upon which the declaration is based, are inoperative and void, because in conflict with section 4237 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2903), which provides that: "No regulations or provisions shall be adopted by any State which shall make any discrimination in the rates of pilotage or half pilotage between vessels sailing between the ports of one State and vessels sailing between the ports of different States, or any discrimination against vessels propelled in whole or part by steam, or against national vessels of the United States; and all existing regulations or provisions making any such discriminations are annulled and abrogated."

The sections of the Virginia Code upon which this action is based are as follows:

"1965. The master of every vessel (other than a coasting vessel having a pilot license), inward bound from sea, shall take the first Virginia pilot that offers his services, Cape Henry bearing west of south to Smith's Point, Yorktown, Newport News, or Norfolk, or any intermediate point; and any such vessel outward bound, shall take the first pilot that offers his services at Smith's Point, Yorktown, Newport News, or Norfolk, or any intermediate point, to sea; and any master, refusing to do so, shall immediately pay to the said pilot full pilotage from the sea to Newport News, Smith's Point, Yorktown, or Norfolk, or from said ports to sea, as the case may be; but no master of a vessel coming from sea shall be compelled to take a pilot after arriving within the line at which Cape Henry bears west of south; provided, however, that any registered vessel arriving within the line of Cape Henry, bearing west of south, without having taken a pilot, bound for Norfolk, Newport News, or Richmond, shall not be liable for pilotage; but the master may pilot his own vessel to Hampton Roads, and there

employ any steamboat or towboat to tow his vessel to her port of destination; provided, that in no instance shall any master be allowed to employ any steamboat or towboat below Hampton Roads without paying full pilotage to the first regular pilot that offers his services to said vessel; and any master so employing a steamboat or towboat below Hampton Roads without a pilot on board of such vessel, when one shall have offered his services, shall be liable to the penalty prescribed in section nineteen hundred and sixty-three. This provision shall apply only to inward bound vessels."

"1969. Pilots shall have pilotage at the following rates: For every vessel owned by a citizen of the United States, and for every vessel owned by a citizen or subject of any foreign State, whose vessels are by treaty placed on the same footing as vessels of the United States, if the vessel be spoken or boarded to the eastward of Cape Henry, there shall be paid for each foot the vessel draws, as follows: From sea to Smith's Point, West Point, Newport News, Norfolk or any place between Smith's Point, West Point, Newport News, or Norfolk, vessels drawing ten feet or under, two dollars and fifty cents; vessels drawing thirteen feet and over ten feet, three dollars; vessels drawing fourteen feet and over thirteen feet, three dollars and fifty cents; vessels drawing sixteen feet and over fourteen feet, four dollars; vessels drawing over sixteen feet, four dollars and fifty cents. If the vessel be boarded or spoken twenty miles or more eastward of Cape Henry, twenty-five cents per foot shall be added to the foregoing rates. There shall be paid the same pilotage from Smith's Point, West Point, Newport News, or Norfolk, or any intermediate point to sea, as from sea to those places; and from Newport News to Jamestown, or any place between Newport News and Jamestown, one dollar and thirty-five cents per foot; from Newport News to Richmond, or any place between Jamestown and Richmond, two dollars and fifty cents per foot; and the same rates of

pilotage shall be paid from said places, respectively, down. Vessels coming from sea to Hampton Roads and thence to any port in Maryland shall be subject to the same rate of pilotage as vessels bound from Newport News to sea. All vessels coming to Hampton Roads, seeking, in ballast, shall only pay one-half pilotage in and one-half out; provided, however, that if such vessel coming to Hampton Roads, seeking, is afterwards chartered to load in any port or place in this State, she shall pay the usual pilotage in and out as though she had come to a direct port. All steamers calling in any port or place in this State for the sole purpose of coaling shall only pay one-half pilotage in and one-half pilotage out. All vessels that go from Norfolk to Newport News to load or finish loading, and all vessels that go from Newport News to Norfolk to load or finish loading, shall, if they take a pilot (which shall be optional with the master), pay a fee of ten dollars to the pilot for transporting any such vessel to or from either place."

By the provisions of the sections of the Code quoted all vessels (except coastwise vessels with a pilot license) inward bound from the sea to Smith's Point, Yorktown, Newport News, or Norfolk, or any intermediate point, and all such vessels outward bound to the sea from Smith's Point, Yorktown, Newport News, or Norfolk, or any intermediate point, are subject to the compulsory regulations and rates therein provided. All vessels are subject to the same regulations, and, under the same circumstances and conditions, are required to pay the same fees.

There is clearly nothing in those statutes which expressly makes any discrimination between such vessels. But the contention of the defendant is that our pilotage system violates section 4237 of the Revised Statutes (U. S. Comp. St. 1901, p. 2903), since it imposes no pilotage rates between Virginia ports, nor between Virginia ports and Maryland ports which can be reached without going to sea, nor upon vessels bound to

or from any point upon the Potomac river, thereby throwing the whole burden of keeping up the compulsory pilotage system upon interstate, and not upon both internal and interstate, commerce, as was intended by section 4237.

That contention raises the question whether or not a State can establish a compulsory system of pilotage as to vessels coming from the sea into her inland ports and as to vessels going from her inland ports to the sea without also establishing a compulsory system of pilotage as to vessels trading between her inland ports respectively, or between her inland ports and the ports of another State which can be reached without going to sea. If she cannot, then a State may be compelled to burden commerce with a pilot system upon her inland waters where such a system is not needed, in order that she may establish the system where it is absolutely necessary for the protection of life and property. That she is not required to do this is plain, we think, from the nature of the subject and from the declarations of Congress and the Supreme Court of the United States on the subject.

By an act of Congress of August 7, 1789, sec. 4, c. 9, 1 Stat. 54, it was declared "that all pilots in the bays, inlets, rivers, harbors and ports of the United States shall continue to be regulated in conformity with the existing laws of the States respectively, wherein such pilots may be, or with such laws as the States may respectively hereafter enact for the purpose until further legislative provision shall be made by Congress."

In the case of *Cooley* v. *Board of Wardens of the Port of Philadelphia*, 12 How. 299, 319, 13 L. Ed. 996, it was said that: "The power to regulate commerce embraces a vast field, containing not only many, but exceedingly various, subjects, quite unlike in their nature; some imperatively demanding a single, uniform rule operating equally upon the commerce of the United States in every port, and some—like the subject (pilotage) now in question—as imperatively demanding that

diversity which alone can meet the local necessities of naviga-
tion. . . . The act of 1789 contains a clear and authori-
tative declaration by the first Congress that the nature of the
subject is such that, until Congress should find it necessary to
exert its power, it should be left to the legislation of the States;
that it is local, and not national; that it is likely to be best pro-
vided for not by one system, or plan of regulations, but by as
many as the legislative discretion of the several States should
deem applicable to the local peculiarities of the ports within
their limits. . . . The practice of the states and of the
national government has been in conformity with this declara-
tion from the origin of the national government until this time
(1851); and the nature of the object, when examined, is such
as to leave no doubt of the superior fitness and propriety, not
to say the absolute necessity of different systems of regulations,
drawn from local knowledge and experience, and conformed to
local wants."

The decision from which we have quoted was made prior to
the enactment of section 4237 of the Revised Statutes (U. S.
Comp. St. 1901, p. 2903), but in the subsequent case of *In re
Alexander McNiel*, 13 Wall. 236, 242, 20 L. Ed. 624, that sec-
tion and the prior acts of Congress on the subject of pilotage
are referred to, and the decision in the case of *Cooley* v. *Board
of Wardens* approved. In following that case the court said,
"We are entirely satisfied with that adjudication, and reaffirm
the doctrines which it lays down."

None of the decisions of the Supreme Court to which we have
referred indicate any change in the views of that court that
pilotage " is local, and not national; that it is likely to be best
provided for not by one system or plan of regulations, but by
as many as the Legislatures of the several States should deem
applicable to the local peculiarities of the ports within their
limits." None of them seem to us to indicate that the effect of
section 4237 of the Revised Statutes was to require a State, if

it legislated at all upon the subject, to enact an uniform system of pilot regulations operating alike upon all her ports without regard to their local peculiarities or necessities.

The State statute which was held in *Spraigue* v. *Thompson*, 118 U. S. 90, 6 Sup. Ct. 988, 30 L. Ed. 115, to be in conflict with section 4237 of the Revised Statutes, expressly excepted from its operation the coasting vessels of the State of Georgia and the vessels trading between the ports of that State and the ports of South Carolina and Florida, when, but for the exception in the statute, such vessels would have been subject to the same compulsory pilot regulations. Under precisely the same circumstances and conditions pilot fees were required from vessels coming from ports other than those of Georgia, South Carolina, and Florida, whilst the vessels of those three States were exempted therefrom.

The sections of the Virginia statute in question do not exempt vessels trading between the inland ports of Virginia or vessels trading between the inland ports of Virginia and the ports of Maryland which can be reached without going to sea. Such vessels do not come within the operation of the compulsory pilot laws of the State, because they do not pass through the capes. There is no discrimination in their favor unless, as before said, the State cannot have compulsory pilot regulations as to vessels coming into her inland ports from the sea and going from those ports to the sea without also having a compulsory pilot system as to vessels trading between her inland ports respectively and between such ports and the ports of Maryland which can be reached without going to sea.

Neither, in our opinion, does section 1990 of the Code, which provides that no vessel bound to or from any point on the Potomac river shall be required to pay pilotage, conflict with the act of Congress (section 4237, Rev. St.). That section was probably enacted for the purpose of conforming our pilot regulations to the congressional provision now found in section 4236

of the Revised Statutes, which provides "that the master of any vessel coming into or going out of any port situate upon the waters which are the boundary between two States may employ any pilot duly licensed or authorized by the laws of either of the States bounded on such waters to pilot the vessel to or from such port." But whether it was or not, the exemption from the compulsory pilot regulations of the State provided for by it do not make any discrimination as to vessels or port. All vessels bound to or from any point on the Potomac are exempted, no matter to what points they are bound or from what ports they may come.

The pilot regulations of this State, whether compulsory or optional, operate alike upon all vessels under the same circumstances and conditions, without regard to the ports from which they come or to which they go.

We are of opinion, therefore, that the pilot regulations of this State upon which the plaintiff's action is based, are not in conflict with the acts of Congress upon the subject; that the plaintiff's declaration stated a good cause of action; and that the trial court erred in sustaining the demurrer thereto.

The judgment complained of must be reversed, the demurrer overruled, and the cause remanded, with leave to the defendant to plead, if he be so advised, and for further proceedings not in conflict with the views expressed in this opinion.

*Reversed.*