### COMMONWEALTH *vs.* JOSEPH I. KEMP.

Plymouth.   November 16, 1925. — January 4, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Jurisdiction. Practice, Criminal,* Trial without jury. *Constitutional Law,* Trial by jury. *Waiver. Jury and Jurors. Pilot. Ship. Interstate Commerce.*

There is no jurisdictional requirement that all criminal trials must be by jury.

G. L. c. 278, § 2, does not mean that, where the facts are agreed upon by the Commonwealth and the defendant, there must be a trial by jury of an indictment or a complaint charging a crime.

The Superior Court has jurisdiction to hear without a jury a complaint charging a misdemeanor where all the facts are agreed upon by the Commonwealth and the defendant and the defendant consents to the waiver of his constitutional right to a trial by jury.

Since pilotage referred to in G. L. c. 103, §§ 28, 35, relates to commerce between States, that statutory provision must be interpreted in the light of relevant statutes of the Congress and decisions of the Supreme Court of the United States.

Sections 4401 and 4444 of U. S. Rev. Sts. apply to and cover port pilotage of a coastwise sea-going steam vessel not sailing under register when in the waters of this Commonwealth.

Section 35 of G. L. c. 103, must be construed in conjunction with § 28 of that chapter, and does not prohibit a pilot, holding a certificate granted by the United States local inspectors of steamboats as pilot for all waters of Massachusetts Bay but not holding any commission under the pilotage laws of this Commonwealth, who had been engaged and employed by the owner of a vessel operating in coasting trade between American Atlantic ports, which was enrolled but not registered, from piloting the vessel in the waters of this Commonwealth although, while the vessel was awaiting his arrival, one who held both a valid commission granted by the Massachusetts pilot commissioners and also a valid license granted by the local inspectors of steamboats appointed under the laws of the United States, each covering the waters in question, had offered his services to the owner and they had been refused.

At the trial of a complaint for an alleged violation of G. L. c. 103, § 35, in the circumstances above described, it was improper to rule that the defendant was subject to the statutory provisions unless he was actually employed on the vessel which had engaged him for the voyage which was being completed at the time his services were sought.

COMPLAINT, received and sworn to in the Second District Court of Plymouth on January 23, 1925, charging that the

defendant "did assume to act as pilot in the conduct of the" steamship Meteor in the waters of the Commonwealth in the town of Hull "not holding a commission as a pilot and not being actually employed on said vessel for the voyage and a commissioned pilot having offered his services."

The facts were agreed upon. Material facts are described in the opinion. On appeal to the Superior Court, the defendant in writing "waived his constitutional right to a trial by jury," and the case was heard by *Avery*, J., a judge of a district court sitting in the Superior Court under Sts. 1923, c. 469; 1924, c. 485. The defendant was found guilty. Under G. L. c. 278, § 30, the judge reported the case to this court for determination.

*M. Wambaugh*, for the defendant.

*D. P. Ranney*, Assistant District Attorney, for the Commonwealth, submitted a brief.

RUGG, C.J. This case comes before us by report under G. L. c. 278, § 30, after the defendant was found guilty. Specific questions of law are stated in the report.

Before considering those questions it is necessary to determine jurisdiction over the case. That lies at the threshold and must first be decided. *Eaton* v. *Eaton*, 233 Mass. 351, 364. *Lonergan* v. *American Railway Express Co.* 250 Mass. 30, 40. That question arises in this way. The defendant, on his appeal to the Superior Court, waived in writing his constitutional right to a trial by jury and was tried without a jury. The offence with which he was charged was a misdemeanor and not a felony. The case was heard upon a statement of agreed facts, which included the whole evidence desired to be presented by either party. The question is, whether a trial on the merits and a finding of guilty by a judge alone without a jury is permissible under the law so that the question of law may be reported. Under the circumstances here disclosed there may be such trial and finding. The point is very nearly concluded by previous decisions. It was said in the leading case of *Jones* v. *Robbins*, 8 Gray, 329, 341, that the object of art. 12 of the Declaration of Rights, securing the right of trial by jury in prosecutions for crime, "is to secure a benefit to the accused,

which he may avail himself of or waive, at his own election."
In *Commonwealth* v. *Whitney*, 108 Mass. 5, it was held that a
defendant might be sentenced in the Superior Court upon
his conviction in a police court where he had been found
guilty by a judge alone, provided he failed to enter and
prosecute his appeal and was defaulted. Such failure on
his part was said to be a waiver of his constitutional right
to a trial by jury. *Batchelder* v. *Commonwealth*, 109 Mass.
361. *Commonwealth* v. *Drohan*, 210 Mass. 445, 447. *Both-
well* v. *Boston Elevated Railway*, 215 Mass. 467, 473. "Even
constitutional rights must be seasonably asserted." *Lebo-
witch, petitioner*, 235 Mass. 357, 363. *Foster* v. *Morse*, 132
Mass. 354. *Young* v. *Duncan*, 218 Mass. 346, 348, 352. In
*Kenney's Case*, 108 Mass. 492, a sentence imposed upon
conviction for a misdemeanor by a judge without a jury,
where the statute provided a right of appeal to the Superior
Court for a trial by jury but the right was not exercised, was
held to be a valid sentence. In *Commonwealth* v. *Dailey*,
12 Cush. 80, it was held that a trial had by consent before a
panel of eleven jurors was valid, and the verdict of guilty
was upheld. The defendant was held to have waived his
right to be tried by a jury of twelve men and to be precluded
from thereafter objecting to a trial by eleven jurors. It was
said by Chief Justice Shaw at page 83, a defendant "may
waive any matter of form or substance, excepting only what
may relate to the jurisdiction of the court."

There is no jurisdictional requirement that all criminal
trials must be by jury. The Superior Court is a court of
original and general jurisdiction. It possesses the inherent
powers of such a court under the common law, unless ex-
pressly limited, as well as those conferred by statute. G. L.
c. 212, § 6. *Crocker* v. *Justices of the Superior Court*, 208
Mass. 162. It is provided by G. L. c. 278, § 2, that "Issues of
fact joined upon an indictment or complaint shall, in the
Superior Court, be tried by a jury drawn and returned in the
manner provided for the trial of issues of fact in civil causes."
This provision does not mean that, where the facts were
agreed as in the case at bar, there must still be a trial by jury.
The case at bar was heard by a judge of a district court sitting

in the Superior Court under the provisions of St. 1924, c. 485. *Commonwealth* v. *Leach,* 246 Mass. 464. It is provided by § 1 of that act that under conditions there specified such a judge may "sit in the Superior Court at the trial or disposition with or without a jury . . . of any misdemeanor . . . ." The implication of these words is that some trials may be had without a jury. The facts agreed in the case at bar show that there was no substantial dispute between the Commonwealth and the defendant. Without going beyond the facts of the case at bar, we are of opinion that the judge had jurisdiction to deal with the case without a jury and to find the defendant guilty.

This complaint charges that the defendant assumed to act as pilot in the conduct of the steamship Meteor within the waters of the Commonwealth in the town of Hull, not holding a commission as pilot and not being actually employed on said vessel for the voyage and a commissioned pilot having offered his services. The agreed facts are in substance that the steamship Meteor is an American merchant vessel of over two thousand tons, having her home port in Boston. She is an enrolled and not a registered vessel under the laws of the United States. She is now and has been for several years regularly employed in the coasting trade between American Atlantic ports. On the voyage in question she was bound from Norfolk in the State of Virginia to Weymouth in this Commonwealth. Prior to the commencement of her voyage her owners had engaged and employed the defendant to pilot the vessel from Nantasket Roads to her destination. The Meteor arrived at Nantasket Roads on December 5, 1924, and there anchored to await the arrival of the defendant. While so waiting, the complainant, holding both a valid commission granted by the Massachusetts pilot commissioners and also a valid license granted by the local inspectors of steamboats appointed under the laws of the United States, each covering the waters to be navigated by the Meteor to her port of destination, came on board, the vessel then being in need of a pilot, and offered his services, which were refused. The defendant thereafter arrived at the vessel and she got under

way and proceeded to Weymouth under his pilotage.    The
defendant held a certificate granted by the United States
local inspectors of steamboats as pilot for all waters of
Massachusetts Bay, including the waters navigated by the
Meteor from Nantasket Roads to Weymouth, but did not
hold any commission under the pilotage laws of this Com-
monwealth.    The master of the Meteor on the voyage in
question held a certificate as pilot granted by the United
States inspectors of steamboats covering all waters here
material, but, as he did not intend to pilot his vessel to
Weymouth, that factor is regarded as irrelevant to the point
to be decided.

The complaint is founded on G. L. c. 103, § 35, which pro-
vides that, "No person unless he holds a commission as a
pilot shall, if a commissioned pilot offers his services or can
be obtained within a reasonable time, assume or continue
to act as pilot in the charge or conduct of any vessel within
the waters of this Commonwealth, unless he is actually em-
ployed on such vessel for the voyage."    A penalty for viola-
tion is established.    By G. L. c. 103, § 28, "All coastwise
steam vessels not sailing under register, . . . vessels regularly
employed in the coasting trade . . . shall be exempt from
compulsory payment of pilotage . . . ."

It is provided by the Constitution of the United States,
art. 1, § 8, that "The congress shall have power . . . to
regulate commerce with foreign nations and among the
several states . . . ."    Pilotage such as here is involved
manifestly relates to commerce between the States.    Hence
these two sections of our statutes must be interpreted in
the light of relevant statutes of the Congress and decisions
of the Supreme Court of the United States.    It was early
held that, although State laws concerning pilots and pilotage
are regulations of commerce, they fall within that class of
powers which may be exercised by the States until Congress
acts on the subject, and such State laws are valid until dis-
placed or abrogated by Congress.    *Cooley* v. *Board of
Wardens of Port of Philadelphia,* 12 How. 299.    *Common-
wealth* v. *Breakwater Co.* 214 Mass. 10, 13.    *Commonwealth* v.
*Nickerson,* 236 Mass. 281, 292, 293.    At first and for many

years the subject of pilots was left to the several States by the express terms of a Federal statute. 1 U. S. Sts. at Large, 53, 54. *Commonwealth* v. *Ricketson,* 5 Met. 412. But later Congress acted with respect to pilots for vessels engaged in coastwise trade. The history of the Federal statutes need not be traced. The present acts of Congress on the subject are found in the following sections of U. S. Rev. Sts. They are, so far as here material, § 4401, "All coastwise sea-going vessels, . . . shall be subject to the navigation laws of the United States, when navigating within the jurisdiction thereof; . . . and every coastwise sea-going steam-vessel subject to the navigation laws of the United States, and to the rules and regulations aforesaid, not sailing under register, shall, when under way, except on the high seas, be under the control and direction of pilots licensed by the inspectors of steamboats." § 4444. "No State or municipal government shall impose upon pilots of steam-vessels any obligation to procure a State or other license in addition to that issued by the United States, or any other regulation which will impede such pilots in the performance of the duties required by this Title . . . . Nothing in this Title shall be construed to annul or affect any regulation established by the laws of any State, requiring vessels entering or leaving a port in any such State, other than coastwise steam-vessels, to take a pilot duly licensed or authorized by the laws of such State, or of a State situate upon the waters of such State." These provisions of the Federal statutes have been construed in several decisions of binding force. In *Spraigue* v. *Thompson,* 118 U. S. 90, the Saxon, a coastwise sea-going steam vessel not under register, declined to receive the proffered services of a pilot licensed according to State laws and took on one licensed by the appropriate officers of the United States, for entering the port of Savannah. It there was said respecting said sections, at page 96, "The section expressly excepts coastwise steam vessels from the regulations established by the laws of any State requiring vessels entering or leaving a port, in any such State, to take a pilot duly licensed or authorized by the laws of any such State . . . . The owners of the Saxon

were, therefore, at liberty to employ any pilot, licensed under the authority of the United States for the particular service in which he was engaged, without regard to the provisions of the Georgia Code requiring it to accept the services of the pilot first tendered." It was said in that case that the pilot who actually navigated the vessel into port, having been engaged "by previous contract, was equivalent to keeping him on board for that purpose during the whole voyage, as he was, in fact, under pay from its commencement." The defendant in the case at bar was engaged by previous contract and nothing appears concerning his pay. That case appears to us indistinguishable in principle from the case at bar. In *Olsen* v. *Smith*, 195 U. S. 332, it was held in effect that by said § 4444 coastwise steam vessels were withdrawn from the State pilotage laws although such State laws were not otherwise interfered with. In *Anderson* v. *Pacific Coast Steamship Co.* 225 U. S. 187, the history of the Federal statutes is given and it was held that the requirement of said § 4401, "as to the piloting of coastwise sea-going vessels, is limited and explicit. It is that 'every coastwise sea-going steam-vessel subject to the navigation laws of the United States and to the rules and regulations aforesaid, not sailing under register, shall, when under way, except on the high seas, be under the control and direction of pilots licensed by the inspectors of steamboats.' This covers port pilotage, for it relates to such vessels 'when under way, except on the high seas;' and it applies only to those '*not sailing under register.*' American vessels are of two classes, those registered, and those enrolled and licensed. 'The purpose of a register is to declare the nationality of a vessel engaged in trade with foreign nations, and to enable her to assert that nationality wherever found. The purpose of an enrolment is to evidence the national character of a vessel engaged in the coasting trade or home traffic, and to enable such vessel to procure a coasting license. The distinction between these two classes of vessels is kept up throughout the legislation of Congress on the subject, and the word register is invariably used in reference to the one class and enrolment, in reference to the other.' *The Mohawk,*

3 Wall. 566, 571. . . . In *Huus* v. *New York & Porto Rico Steamship Co.* 182 U. S. 392, 394, after quoting from §§ 4401 and 4444 of the Revised Statutes, the court said: 'The general object of these provisions seems to be to license pilots upon steam vessels engaged in the *coastwise* or interior commerce of the country, and at the same time, to leave to the States the regulation of pilots upon all vessels engaged in *foreign* commerce.' There, the steamer was enrolled and licensed for the coasting trade under the laws of the United States and was engaged in trade between Porto Rico and New York after the treaty of cession. It was held that she was not within the pilotage laws of New York."

It seems plain from these decisions that these sections of the United States Revised Statutes apply to and cover port pilotage of a vessel like the Meteor, which was a coastwise sea-going steam vessel not sailing under register. In the presence of such action by the Congress with respect to the field of pilotage for such vessels, all State laws on the subject are abrogated, at least so far as the two are inconsistent.

Rightly interpreted, § 35 of G. L. c. 103 does not apply to the facts here disclosed. The phrase of § 35 considered by itself alone is absolute and comprehensive. But it must be read and construed in conjunction with § 28 of the same chapter. The latter section exempts from the requirements of pilotage set forth in c. 103 all coastwise steam vessels not sailing under register and vessels regularly employed in the coasting trade. Those exemptions first appear in St. 1871, c. 351, § 1, in a somewhat limited form, and in more extended scope in St. 1873, c. 284, § 1. It is not a violent inference to assume that these exemptions were enacted in order to make our statutory law as to pilots in harmony with the requirements of the act of Congress now found in U. S. Rev. Sts. §§ 4401 and 4444, which in substance first appear in the act of February 28, 1871, c. 100, § 51; 16 U. S. Sts. at Large, 455. It is apparent from the provisions both of § 28 and § 35 of G. L. c. 103, that the latter section does not impose a penalty upon a pilot duly authorized under the laws of the United States to pilot a coastwise steam vessel not sailing under register and a vessel regularly employed in the coasting

trade, which vessels are expressly exempted from compulsory pilotage under the former section.

It was held in *Wilson* v. *Gray*, 127 Mass. 98, and *Chase* v. *Philadelphia & Reading Railroad*, 135 Mass. 347, that vessels regularly employed in the coasting trade were not subject to our compulsory pilotage laws. Those decisions go far toward the determination of the case at bar.

The defendant was regularly licensed under the laws of the United States to perform the pilotage of which complaint here is made. Those laws were enacted pursuant to a power expressly enumerated as conferred upon Congress by the Constitution of the United States. They are valid laws. The provisions of G. L. c. 103, § 35, do not denounce the conduct of the defendant upon the facts here disclosed.

It follows that the defendant ought to have been acquitted upon the agreed facts. The ruling that the defendant was subject to the provisions of G. L. c. 103, § 35, unless actually employed on the vessel for the voyage, was erroneous. We understand that this conclusion is in entire harmony with *Spraigue* v. *Thompson*, 118 U. S. 90. The finding of guilty is set aside. In accordance with the terms of the report, the case is to be remanded to the Superior Court for discharge of the defendant, because as matter of law he is not guilty on the agreed facts.

*So ordered.*