**MORAN MARITIME ASSOCIATES, et al., Plaintiffs,**

v.

**UNITED STATES COAST GUARD, Defendant.**

Civ. A. No. 80–3008.

United States District Court, District of Columbia.

July 15, 1981.

William A. Carnahan, Austin P. Olney and Alan Konefsky, LaBoeuf, Lamb, Leiby and MacRae, Washington, D.C., for plaintiffs.

John D. Bates, Asst. U. S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

GASCH, District Judge.

This suit is brought by Moran Maritime Associates (Moran) and American Waterways Operators, Inc. (AWO) to challenge action taken by the United States Coast Guard allegedly in violation of the informal rulemaking procedures of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1976). The matter is currently before the Court on the parties' cross-motions for summary judgment. Plaintiffs contend that the defendant's decision to enforce a federal pilotage statute, 46 U.S.C. § 364 (1976), and regulation, 46 C.F.R. § 157.30–40 (1980), against certain unmanned, oil-carrying "tank barges" in tow by tugboats constitutes a new regulation, interpretation, or policy and, therefore, triggers the notice and comment procedures of § 553 of the APA. In addition, plaintiffs allege that the

defendant's enforcement action was arbitrary and capricious.

The defendant denies any change in its interpretation of federal pilotage regulations and asserts that, at most, it has not enforced the pilotage requirements vigorously in the past. The defendant contends that its present enforcement efforts are consistent with prior interpretation and do not trigger a duty to utilize the notice and comment procedures of § 553 of the APA. For the reasons set forth below, the Court concludes that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law.

## I. BACKGROUND.

Moran owns and operates tugboats, including the tug ALICE MORAN, and oil-carrying tank barges, including the tank barge NEW YORK. AWO is a trade association whose members own and operate tugs and oil-carrying tank barges. (Moran is not a member of AWO.) The controversy between these parties and the Coast Guard stems from the Coast Guard's decision to institute enforcement actions against owners of oil-carrying tank barges, including Moran and members of AWO, for failure to comply with federal law mandating federally-licensed pilots on board certain seagoing vessels when these vessels are within the coastal waters of the United States. Plaintiffs contend that, in the past, *all* tank barges have been exempt from federal pilotage requirements pursuant to Coast Guard regulation 46 C.F.R. § 157.30–40 (1980). They allege, therefore, that the Coast Guard's attempt to subject certain tank barges carrying petroleum products to the pilotage requirements is invalid because the service neglected to comply with the notice and comment procedures of § 553 of the APA. At this point, an examination of the statutory and regulatory provisions dealing with federal pilotage requirements will illuminate the precise issue before the Court on these cross-motions for summary judgment.

Congress has enacted various statutes designed to ensure the safe operation of vessels within the coastal waters of the United States. Within this statutory scheme is the federal pilotage statute, 46 U.S.C. § 364 (1976), which provides in part that all "coastwise seagoing steam vessel[s] subject to the navigation laws of the United States ... not sailing under register, shall, when under way, except on the high seas, *be under the control and direction of pilots licensed by the Coast Guard.*" (Emphasis added). The purpose of the pilotage statute is to ensure the safety of life and property in confined harbor waters by placing "coastwise seagoing steam vessels" under the control of pilots specially licensed by the Coast Guard to assure the pilots' intimate knowledge with local navigational conditions. *See Jackson v. Marine Exploration Co.*, 583 F.2d 1336, 1338–39 (5th Cir. 1978).

In the statutory scheme, moreover, the term "steam vessel" is not limited to vessels propelled by steam engines; rather, Congress has expanded the definition of "steam vessel" to include other types of vessels, including, in some circumstances, tank barges. Whether a particular tank barge is a "steam vessel" for the purposes of the federal pilotage requirements of 46 U.S.C. § 364 depends upon the type of cargo the tank barge contains. Under 46 U.S.C. § 391a(3) (Supp. III 1979), *as amended by* Pub.L.No. 96–478, § 13(a)(2) (1980), any U.S. vessel, "regardless of tonnage, size, or manner of propulsion ... which is constructed or adapted to carry, or which carries, oil or any hazardous materials in bulk as cargo" constitutes a "steam vessel" under § 364. In light of this provision, tank barges that carry oil or other hazardous substances are "steam vessels" under § 364 and must operate under the control of Coast Guard licensed pilots when in coastal waters (*e. g.*, when entering, navigating in, or leaving U.S. ports and harbors). Because the tank barges at issue in this case carry oil and oil-related products, *see* Plaintiffs' Statement of Material Facts as to which there is no Genuine Issue ¶ 6, they clearly fall within the statutory definition of "steam vessel" contained in 46 U.S.C. § 391a(3).

Not all "coastwise seagoing steam vessels," however, are required to carry a per-

son specially licensed by the Coast Guard as a federal pilot when they enter coastal channels. The regulation upon which the plaintiffs rely, 46 C.F.R. § 157.30–40 (1980), permits *smaller* "coastwise seagoing steam vessels" (those less than 1,000 gross tons) to operate without a federally-licensed pilot aboard provided the vessel is under the control of a federally-licensed "master" (the captain) or "mate." The regulation reads in full:

> *Vessels not more than 1,000 gross tons.*
> For the purposes of § 157.20–40 [the regulation that implements § 364, the federal pilotage statute], a person holding a license as master or mate is a licensed pilot of a vessel of not more than 1,000 gross tons, within the limitation and restriction of his license, on which he is employed as master or mate.

In practical effect, the regulation designates as a federally licensed pilot all masters and mates of vessels under 1,000 gross tons, provided the master or mate acts within the limitations of his license.[1]

Under this regulation, the master or mate of most tugboats may also serve as the federally-licensed pilot of the tugboat on which he serves because the vast majority of tugboats weigh less than 1,000 gross tons. The tugboat ALICE MORAN, for example, weighs only 277 gross tons. Affidavit of Leonard G. Goodwin ¶ 6. Thus, the master or mate of the ALICE MORAN may serve as the Coast Guard licensed pilot of the tugboat whenever it enters coastal waters. The crux of this suit, however, pertains not to the pilotage requirements for tugboats, but to the pilotage requirements for the oil-carrying *tank barges* that are towed by tugboats. For example, the tugboat ALICE MORAN tows the oil-carrying tank barge NEW YORK. Although the ALICE MORAN weighs less than 1,000 gross tons, the NEW YORK weighs far in excess of the 1,000 gross ton limitation contained in 46 C.F.R. § 157.30–40 (14,817 gross tons, to be exact). Affidavit of Leonard G. Goodwin ¶ 6.

The issue thus raised is whether the master or mate of the tugboat ALICE MORAN (or of any other tugboat of under 1,000 gross tons) can serve as the pilot not only of the tug, but also of the oil-carrying tank barge NEW YORK (or of any other oil-carrying tank barge in excess of 1,000 gross tons). Plaintiffs contend that the established Coast Guard interpretation of 46 C.F.R. § 157.30–40 (and its predecessor regulation, 46 C.F.R. § 10.05–6 (1968)), until very recently, has permitted the master or mate of a tugboat of less than 1,000 gross tons to pilot *both* the tug and the tank barge in tow, *regardless* of the weight of the particular tank barge. They allege that the decision to require a federally-licensed pilot on board tugboats towing oil-carrying tank barges in excess of 1,000 gross tons represents a *new* interpretation of 46 C.F.R. § 157.30–40 and therefore requires informal rulemaking procedures under § 553 of the APA. They also allege that the Coast Guard's action is arbitrary and capricious because the agency failed to adduce any evidence that a federally-licensed pilot, in addition to a tugboat's master or mate, is necessary or will enhance the safety of tugboat-tank barge combinations in which the tank barge weighs in excess of 1,000 gross tons.

The sole issue for the Court to resolve in this dispute is whether the Coast Guard, in fact, previously interpreted 46 C.F.R. § 157.30–40 to permit the master or mate of a tugboat to serve as pilot both of the tugboat and of any oil-carrying tank barge, regardless of the weight of the tank barge. The Coast Guard concedes that a rulemaking in compliance with 5 U.S.C. § 553 would be required if it "substantively altered" the regulation through a change in policy or interpretation. Memorandum of Points and Authorities in Support of Defendant's Cross-motion for Summary Judgment at 13, 20. The service vigorously denies, however, that its interpretation of 46 C.F.R. § 157.-

---

1. For example, a person may be licensed as a master of vessels of no more than 500 gross tons. This person could serve as the pilot only of vessels within his license limitation: less than 500 gross tons.

30–40 has ever permitted the master or mate of a tugboat to act as the pilot of an oil-carrying tank barge in excess of 1,000 gross tons. *See* Affidavit of Scott D. McCowan ¶ 5; Affidavit of Henry H. Bell ¶ 7. To the contrary, the Coast Guard argues that its current efforts to compel owners of oil-carrying tank barges in excess of 1,000 gross tons to retain federally-licensed pilots are consistent with—and indeed mandated by—prior interpretations of the federal pilotage regulations and, therefore, do not necessitate rulemaking procedures. The Coast Guard also asserts that its decision to require federally-licensed pilots for the oil-carrying tank barge NEW YORK and similar vessels is neither arbitrary nor capricious because the NEW YORK falls clearly within the statutory language of 46 U.S.C. §§ 364 & 391a(3), but outside the regulatory exception of 46 C.F.R. § 157.30–40 for "steam vessels" under 1,000 gross tons.

## II. DISCUSSION.

As stated above, this case essentially boils down to one issue: whether the Coast Guard's efforts to enforce the federal pilotage statute in the case of oil-carrying tank barges of over 1,000 gross tons represents a change in that agency's prior interpretation of 46 C.F.R. § 157.30–40. If the Coast Guard's recent enforcement efforts do not constitute a substantive change from previous policy, the requirements of § 553 of the APA—that the agency publish notice in the Federal Register and hold a hearing on proposed new substantive rules—are inapplicable.[2]

The Court's review of the affidavits, documents, and sources submitted by the parties has failed to disclose any previous official Coast Guard policy permitting oil-carrying tank barges in excess of 1,000

gross tons to satisfy the pilotage requirements of 46 U.S.C. § 364 by complying with 46 C.F.R. § 157.30–40. Moran and AWO cite no prior Coast Guard decision or regulation to the effect that the master or mate of a tug can serve as the master of a tank barge in tow regardless of the size of the barge. The explicit language of 46 C.F.R. § 157.30–40 contradicts the meaning the plaintiffs seek to attach to that regulation. By its terms, the regulation provides an exemption from the federal pilotage law only for vessels under 1,000 gross tons. The plaintiffs offer no persuasive evidence to alter the plain meaning of this provision. Indeed, the strongest evidence cited by plaintiffs is, at best, ambiguous regarding any previous Coast Guard exemption for tank barges. Plaintiffs attach great significance to the "regulatory history" of 46 C.F.R. § 157.30–40, which they assert shows that the Coast Guard "addressed the question of the necessity for federally licensed pilots on tug-barge combinations...." Plaintiffs' Statement of Points and Authorities at 20. The regulatory history, however, does not support the broad reading of 46 C.F.R. § 157.30–40 that plaintiffs seek to establish. The regulatory history to which Moran and AWO refer is the statement of purpose published by the Coast Guard in the Federal Register to explain the adoption of 46 C.F.R. § 157.30–40. *See* 37 Fed.Reg. 528 (Jan. 13, 1972). In the statement of purpose, the Coast Guard mentions a comment received in opposition to the proposed new rule. The comment asserted that

> *any size* vessel traveling on waters requiring pilotage knowledge should be under the guidance of a licensed pilot for the waters concerned and that with the advent of large, powerful motor-driven

---

**2.** Resolution of this issue also disposes of the plaintiffs' claim that the Coast Guard's enforcement efforts are arbitrary and capricious or otherwise not in accordance with law. If the defendant's interpretation of the regulation has been consistent, enforcement efforts against the plaintiffs cannot be termed arbitrary and capricious because the Coast Guard's actions are fully in accordance with—indeed mandated by—the relevant statutory and regulatory pilotage provisions. The plaintiffs concede that the tugboats against which the Coast Guard has brought enforcement actions have been towing oil-carrying tank barges in excess of 1,000 gross tons without a federally-licensed pilot on board. Consequently, these enforcement actions are entirely proper if the Coast Guard's interpretation of 46 C.F.R. § 157.30–40 has been consistent since that regulation's promulgation.

tugs pushing barges of a size comparable to larger ships, a capability exists for major disasters if knowledgeable, licensed pilots are not required.

37 Fed.Reg. 528 (Jan. 13, 1972) (emphasis added). Moran and AWO contend that by stating in response to this comment that "the professional knowledge and experience required for a license as master or mate of ocean and coastwise vessels exceeds the knowledge and experience necessary to safely operate and navigate vessels of *1,000 gross tons or less*," the Coast Guard evidenced a policy permitting tug masters and mates to serve as pilots of *any* tank barge, regardless of its size. The clear import of both the regulation and the statement of purpose, however, contradicts the plaintiffs' assertions. Although the statement of purpose mentions the comment quoted above, nowhere does the Coast Guard accept the commentator's interpretation that the regulation will permit "barges of a size comparable to larger ships" to be operated without licensed pilots. Rather, the Coast Guard explicitly states several times that the regulation applies only to vessels of less than 1,000 gross tons. In reiterating this position, the agency simply echoes the clear language of the regulation, which is applicable by its terms only to vessels of less than 1,000 gross tons.

Significantly, Moran and AWO do not discuss another portion of the regulation's statement of purpose, which warrants quotation in full:

Although he is not examined on local knowledge of specific routes, a person licensed as master or mate under present regulations can safely navigate *the small, maneuverable, shallow draft vessels of 1,000 gross tons or less* without the intimate and precise knowledge of a specific local area required of a pilot of large, deep draft vessels.

37 Fed.Reg. 528 (Jan. 13, 1972) (emphasis added). This statement reflects the Coast Guard's rationale for adopting 46 C.F.R. § 157.30–40: masters and pilots of smaller, shallow draft vessels are competent to pilot these vessels in coastal waters. In light of

this rationale, the plaintiffs' contention that the Coast Guard intended the regulation to permit masters and mates of small tugs to pilot huge, deep draft tank barges of far in excess of 1,000 gross tons is untenable.

In addition to the explicit language of the regulation, the record is replete with numerous statements by Coast Guard personnel that the agency's interpretation of the regulation has never varied. See Affidavit of Peter Desmond and accompanying exhibit (letter from R. F. Bennett, Captain, U.S. Coast Guard (July 24, 1980)); Affidavit of Dewey Villareal and accompanying exhibit (letter from R. E. Sawyer, Captain, U.S. Coast Guard (Aug. 4, 1980)); Affidavit of Scott D. McCowan, Commander, U.S. Coast Guard; Affidavit of Henry H. Bell, Rear Admiral, U.S. Coast Guard. The plaintiffs counter with an affidavit by William Rea, III, a retired Coast Guard Rear Admiral who was in charge of merchant marine safety at the time the Coast Guard promulgated 46 C.F.R. § 157.30–40. They place heavy reliance upon this affidavit to support their argument that the Coast Guard, prior to the promulgation of 46 C.F.R. § 157.30–40, had a longstanding policy permitting a licensed tug master or mate to pilot a tug-barge combination in coastal waters regardless of the weight of the barge. Plaintiffs contend that 46 C.F.R. § 157.30–40 incorporated this longstanding policy and that the regulation has been so construed by the Coast Guard until recently. Unfortunately for plaintiffs' position, however, the Rea affidavit does *not* state, as plaintiffs assert it does, that this longstanding Coast Guard policy applied "regardless of weight." Rear Admiral Rea simply states that § 157.30–40 and its predecessor regulations, 46 C.F.R. §§ 10.05–6, 10.05–36 (1968), allowed a licensed tug master or mate to serve as pilot of both the tug and the barge in tow. The statement is an accurate description of the effect of these regulations as long as one adds the qualifying phrase, "for vessels of not more than 1,000 gross tons." Rear Admiral Rea does refer to the 1,000 gross ton limitation early in his affidavit, and only then does he go on to discuss the effect of the regulation.

In this context, the Court interprets his later discussion of Coast Guard policy and practice to be qualified by his earlier statement regarding the 1,000 gross ton weight limitation upon this policy. As a final comment, the Court notes also that the Rea affidavit refers throughout only to "barges." Under 46 U.S.C. § 391a(3), federal pilotage requirements apply only to "tank barges" that carry "oil or any hazardous materials in bulk as cargo or in residue." Consequently, Rear Admiral Rea's discussion of Coast Guard policy regarding tug-barges is, in general, entirely correct: most barges do not carry oil or other hazardous materials and thus are not subject to 46 U.S.C. § 364, the federal pilotage statute. Moran and AWO's attempt to construe the Rea statements to apply specifically to oil-carrying tank barges in excess of 1,000 gross tons, however, ignores the specific language of both the applicable statute, 46 U.S.C. § 391a(3), and of the pertinent regulation, 46 C.F.R. § 157.30–40, both of which bring such tank barges within the ambit of the federal pilotage laws.

Moran and AWO also seek to support their position by references to the Coast Guard's past failure to enforce the federal pilotage laws against tank barges—a failure which the Coast Guard readily admits, but which it attributes primarily to manpower limitations. Moran and AWO contend that this past failure to enforce the law represented an official Coast Guard policy or interpretation exempting tank barges from pilotage requirements. They rely on a letter from R. Barry Eldridge, a Coast Guard Captain in charge of Boston Harbor, which states that "in the past, the Coast Guard has not actively enforced [the pilotage requirement] for tank barges." *See* Affidavit of John C. Newcomb and accompanying exhibit (letter dated Dec. 29, 1980). Captain Eldridge discusses the increasing safety problems raised by the failure to enforce the pilotage laws with regard to large (greater than 1,000 gross tons) tank barges and suggests, as a solution, the possibility of "placing pilots on larger barges." This letter is perhaps the strongest evidence Moran and AWO offer to establish a past

Coast Guard policy exempting tank barges in excess of 1,000 gross tons from the pilotage requirements of 46 U.S.C. § 364. The letter, however, also construes the relevant statutory and regulatory provisions and concludes that "non self-propelled vessels (barges) carrying any inflammable or combustible liquid cargo in bulk" are "steam vessel[s] for the purposes of 46 U.S.C. § 364." The letter, therefore, does not contradict the Coast Guard's asserted consistent interpretation of 46 C.F.R. § 157.30–40, but simply recognizes that, in the past, the Coast Guard has not vigorously enforced the pilotage law in Boston Harbor.

The parties attach a different significance to the Coast Guard's past failure to enforce the pilotage laws against oil-carrying tank barges. Moran and AWO argue that the failure to enforce the law in the past represented a Coast Guard interpretation or policy that cannot be altered by the agency absent notice and comment rulemaking or, at the minimum, "a reasoned explanation of [the] action ... 'consistent with law and supported by substantial evidence on the record.'" Plaintiffs' Points and Authorities at 22 (quoting *Baltimore & Annapolis R.R. v. Washington Metropolitan Area Transit Comm'n*, 642 F.2d 1365, 1370 (D.C.Cir.1980)). Plaintiffs rely extensively on cases such as *Baltimore & Annapolis R.R., supra; Greyhound Corp. v. ICC*, 551 F.2d 414 (D.C.Cir.1977); and *CBS v. FCC*, 454 F.2d 1018 (D.C.Cir.1971), all of which held that administrative agencies must either adhere to their own precedents or explain any deviations from them. The rationale for these decisions is that

> when an agency decides to reverse its course, it must provide an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law.

*CBS v. FCC*, 454 F.2d at 1026. All of these decisions, however, are distinguishable from the present case because, in each, the agency involved sought to ignore or to change a clearly established precedent without articulating any reasons for the proposed new

policy or interpretation. In the present controversy, Moran and AWO have been unable to locate any Coast Guard precedent—either in the form of a regulation or a ruling—holding that oil-carrying tank barges in excess of 1,000 gross tons need not comply with 46 U.S.C. § 364 because of the operation of the limited exemption granted by 46 C.F.R. § 157.30–40. Nor are cases holding that agencies must comply with § 553 of the APA when proposing substantive rule changes apposite. *See Texaco, Inc. v. FPC*, 412 F.2d 740, 744–45 (3d Cir. 1969); *United States ex rel. Parco v. Morris*, 426 F.Supp. 976, 985 (E.D.Pa. 1977); *St. Francis Memorial Hosp. v. Weinberger*, 413 F.Supp. 323, 327 (N.D.Cal.1975). Based upon the record before the Court, Moran and AWO simply have not established that the Coast Guard had a previous interpretation of 46 C.F.R. § 157.30–40 for tank barges that differed from the clear language of the regulation, which by its terms limits its applicability to vessels of under 1,000 gross tons.

■■■ The Coast Guard argues that its previous failure to enforce the pilotage statute against large tank barges did not stem from an administrative interpretation of § 157.30–40, but from insufficient enforcement resources, and that it cannot now be estopped from enforcing the law because of its past inaction. The Court agrees that prior inaction by the Coast Guard does not now bar the agency from implementing the clear mandate of the regulation and its authorizing statute. *See Pacific Shrimp Co. v. Department of Transportation*, 375 F.Supp. 1036 (W.D.Wash.1974). The *Pacific Shrimp* court held that despite a longstanding Coast Guard policy (37 years) to exempt certain vessels from a statutory inspection program, the agency was not estopped from re-interpreting the statute to apply to the previously-exempt vessels. *Id.* at 1041–42. The reasoning of the court is instructive:

> An administrative agency charged with protecting the public interest is not precluded from taking appropriate action

nor can the principles of equitable estoppel be applied to deprive the public of the statute's protection because of mistaken action or lack of action on the part of public officials.

*Id.* at 1042. The Coast Guard action in *Pacific Shrimp* departed from prior agency interpretation in a far clearer, more substantial manner than the Coast Guard action challenged in the present suit. Consequently, equitable estoppel, which is rarely applicable to governmental actions, *see, e. g., Utah Power & Light Co. v. United States*, 243 U.S. 389, 408–09, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917), is inappropriate in the context of the present dispute.

As a final argument, Moran and AWO attach significance to suggestions advanced by the Coast Guard in various letters to members of the towing industry that the regulations governing pilotage for tug-tank barge combinations may be in need of revision or clarification. *See* Affidavit of Reginald Hayden and accompanying exhibit (letter from Henry Bell, Rear Admiral, U. S. Coast Guard (Sept. 22, 1980)); Affidavit of Dewey Villareal°and accompanying exhibit (letter from R. E. Sawyer, Captain, U. S. Coast Guard (Aug. 4, 1980)). Despite the plaintiffs' attempt to construe these statements as an admission by the Coast Guard that the current pilotage regulations do not cover oil-carrying tank barges, the pronouncements do not represent such a position. As the Court reads them, the statements simply raise the possibility of further Coast Guard regulatory action in the tank barge area, with the eventual goal of removing tank barges from the general pilotage regulations and promulgating a regulation designed specifically to cover these vessels. *See* Sawyer letter, *supra;* 48 Fed. Reg. 20,036, 20,050 (Apr. 2, 1981). At present, moreover, regulatory action regarding tank barges is in the "Further Action to Be Determined" category. 48 Fed. Reg. 20,036, 20,050 (Apr. 2, 1981). Possible future action by the Coast Guard, however, does not alter the current clear applicability

of the statutory and regulatory pilotage provisions to tank barges in excess of 1,000 gross tons carrying petroleum products.[3]

In sum, plaintiffs have failed to raise a genuine issue as to the existence of a previous Coast Guard interpretation of 46 C.F.R. § 157.30–40 permitting the master or mate of a tug to act as the pilot of the tank barge in tow when that barge is in excess of 1,000 gross tons and has a cargo of oil in bulk or as residue. Absent such a previous administrative interpretation or policy, the Coast Guard's current enforcement efforts against the tank barge NEW YORK and similar vessels are consistent both with the pilotage statute and with accompanying regulations and do not require any procedural responsibilities under § 553 of the APA. In addition, because the defendant's actions are entitled to the presumption of regularity traditionally accorded administrative agencies, *see, e. g., Mazaleski v. Treusdell*, 562 F.2d 701, 717 n.38 (D.C.Cir. 1977), the plaintiffs' failure to adduce any credible evidence of a prior pilotage exemption for oil-carrying tank barges in excess of 1,000 gross tons compels the Court to reject the contention that the Coast Guard's current enforcement efforts against such tank barges are arbitrary, capricious, or otherwise not in accordance with law.

III. CONCLUSION.

Upon review of all the evidence submitted by the parties, the Court concludes that the plaintiffs have failed to raise a genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is granted, plaintiffs' motion for summary judgment is denied, and summary judgment for defendant and against plaintiffs is entered.

---

**3.** *Cf. Davis v. M/V Ester S*, 509 F.2d 1377, 1379–81 (5th Cir. 1975). The *Davis* court stated, in dicta, that unmanned tank barges carrying combustible liquid cargo are subject to the federal pilotage requirements of 46 U.S.C. § 364 (1976). The *Davis* court so stated in the course of its decision holding that the federal pilotage statute pre-empted state pilotage laws with re-gard to all "coastwise seagoing steam vessels," including unmanned tank barges carrying oil. *Id.* The court did not refer to the limited pilotage exemption provided by 46 C.F.R. § 157.30–40, however, and thus the decision, though entitled to some weight, is not controlling on the precise issue raised by this suit.