WASHINGTON TOUR GUIDES ASSOCIATION, Plaintiff,

v.

NATIONAL PARK SERVICE, et al., Defendants.

Civ. A. No. 92–2074.

United States District Court, District of Columbia.

Oct. 15, 1992.

Peter N. Mann, Washington, DC, for plaintiff.

Sally Rider, Office of U.S. Atty., Washington, DC, for defendants.

## MEMORANDUM OPINION

REVERCOMB, District Judge.

Pending before the Court are plaintiff's motion for a preliminary injunction and defendants' motion for summary judgment. For the reasons stated herein, the Court concludes that plaintiff's motion shall be denied and defendants' motion shall be granted.

### I. Background[1]

This case arises out of recent efforts by the National Park Service to enforce an Interior Department regulation that proscribes engaging in or soliciting business

---

1. All of the facts set forth herein are taken from either the plaintiff's brief or a statement of stipulated facts, both of which were filed with the Court on September 22, 1992.

on national park grounds without a permit.[2]

Plaintiff is a trade association consisting of six companies and two individuals (hereinafter referred to collectively as "plaintiffs") who provide tour guide services in and around principle tourist attractions in the Washington, D.C. area. Each of the plaintiffs is licensed by the District of Columbia's Washington Metropolitan Area Transportation Commission to provide tour guide services in the Washington metropolitan area. None of the plaintiffs, however, hold permits, contracts, or other written agreements from the United States to provide tour guide services on national park grounds, and all parties agree that the D.C. permits held by plaintiffs do not authorize them to engage in or solicit business in areas under the jurisdiction of the United States Park Police.[3] *See* D.C. Mun. Regs. tit. 24, § 501.5.

Nevertheless, each of the plaintiffs has, for at least the past fifteen years, conducted and solicited business on national park grounds—namely, by soliciting tourists who congregate near or pass by the northeast section of the Ellipse. From time to time over the years, plaintiffs met with representatives from the National Park Service who informed them that "as long as the plaintiffs complied with all laws, the National Park Service would not act to interfere with the operation of the plaintiff's businesses." Brief for Plaintiff at 2.

On or around August 12, 1992, plaintiffs received notice from the National Park Service stating in part:

This is an official notice that effective August 14, 1992, the long-standing provisions of law and regulation prohibiting vending and the solicitation of sightseeing business on the sidewalks and roadways under administration of the National Park Service, unless the vendor or sightseeing guide possesses a permit issued by the National Park Service, will be strictly enforced.

Complaint for Injunctive Relief, Ex. I. Shortly thereafter, officers of the National Park Police began issuing "courtesy tags" to plaintiffs, noting violations of the solicitation prohibition and encouraging voluntary compliance with applicable laws and regulations. Plaintiffs also were informed that beginning August 25, 1992, National Park Police officers would issue formal citations should plaintiffs continue to solicit business on national park grounds. Such citations carry a fifty dollar fine as penalty.

Plaintiffs ceased operating their businesses on national park grounds on August 26, 1992, and allege thereafter to have suffered a seventy-five percent reduction in revenues. Plaintiffs filed this action on September 10, 1992 seeking a temporary restraining order and preliminary injunction. They claim that the National Park Service's prohibition of solicitation in this case violates First Amendment protection of commercial speech. Additionally, plaintiffs argue that the National Park Service's actions have deprived them of property interests without due process of law, in violation of the Fifth Amendment to the Constitution. Plaintiffs also contend that the National Park Service should be estopped from enforcing the solicitation ban because of representations made to plaintiffs at various meetings over the past several years. Finally, plaintiffs challenge the award in 1989 of an exclusive contract to provide sightseeing services on national park grounds in the National Capital Region to Tourmobile.

The Court issued a temporary restraining order on September 14, 1992 to preserve the status quo and set this matter

---

**2.** The specific regulation being enforced is set forth at 36 C.F.R. § 5.3, which provides that: Engaging in or soliciting any business in park areas, except in accordance with the provisions of a permit, contract, or other written agreement with the United States, except as such may be specifically authorized under special regulations applicable to a park area, is prohibited.

**3.** Presently, only one business, not a party to this suit, possesses a permit to conduct a sightseeing business on national park grounds in the National Capital Region, Landmark Services Tourmobile ("Tourmobile"). Tourmobile has held a permit for a number of years, and its contract with the Interior Department was renewed in 1989, to run until 2005.

down for a hearing on the motion for a preliminary injunction. Defendants' then moved for dismissal or, in the alternative, for summary judgment. All of the motions are now fully briefed, and the Court heard oral argument from each party at the preliminary injunction hearing held October 6, 1992.

## II. Analysis

### A. First Amendment Claim

Twelve years ago, the Supreme Court set forth the test for determining whether a particular regulation of commercial speech violates the First Amendment:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). The present inquiry is concerned only with the last two elements of this test.[4]

The substantial government interests at stake are not in dispute.

The government's significant interests include (1) maintenance of the parks "in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them by their presence, ...; (2) ensuring the public's unimpeded use and enjoyment of the parks without being confronted or harassed by solicitation; (3) preserving the non-commercial nature of National Parks; (4) protection of the aesthetic aspects of the Ellipse and other Park Service property in the National Capital Region, including the prevention of "visual blight," ...; (5) preventing commercial exploitation of park visitors; and (6) protecting visitors to the Ellipse and other National Capital Region parks from being harassed or otherwise bothered unduly, since the visitors are a captive audience.

Defendants' Memorandum at 6–7. The plaintiffs do not seriously contend that the regulation in question, prohibiting engaging in or soliciting business on national park grounds without a permit, fails to directly advance the substantial government interest enunciated by the defendants. Plainly, regulation of the type and amount of business conducted on national park grounds is necessary to preserve the parks, to protect against commercial exploitation, and to ensure pleasurable experiences for those who visit the parks.

Instead, plaintiffs contend that the regulation, as applied to them, is not "in proportion" to the asserted government interest because it amounts to a virtual ban on commercial activity.[5] *See* Plaintiff's Reply

---

**4.** Both parties stipulate that the solicitation in which plaintiffs engage is commercial speech. Stipulated Facts at ¶ 4. Moreover, defendants do not allege that plaintiffs' speech is misleading or is intended to solicit unlawful activity. Defendant's [sic] Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction and in Support of Defendant's [sic] Motion to Dismiss or in the Alternative for Summary Judgment [hereinafter "Defendants' Memorandum"] at 6. For their part, plaintiffs do not argue that the government's interest in preserving and protecting the national parks, *see id.* at 6–8, is not substantial, but that the regulation sought to be enforced against them is "overbroad and excessively restrictive." Brief for Plaintiff at 15.

**5.** Because this case involves purely commercial speech, it is easily distinguished from cases in which solicitation prohibitions have been held to be unconstitutional infringements upon pure speech. *See, e.g., New Jersey Citizen Action v. Edison Township,* 797 F.2d 1250 (3d Cir.1986) (city ordinance regulating door to door canvassing and solicitation by political action groups), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 186 (1987); *City of Watseka v. Illinois Pub. Action Council,* 796 F.2d 1547 (7th Cir. 1986) (city ordinance regulating hours of door to door solicitation, including solicitation by political action groups), *aff'd,* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987); *Association of Community Org. for Reform Now v. City of Frontenac,* 714 F.2d 813 (8th Cir.1983) (city ordinance prohibiting charitable canvassing at night and on Sundays and holidays).

to Government's Motion to Dismiss or for Summary Judgment [hereinafter "Plaintiff's Reply"] at 6–7. In fact, the government has not "banned" commercial activity, but has awarded an exclusive permit to conduct commercial sightseeing to one company.[6]

■■■ Plaintiffs contend that less restrictive means are available by which the government could protect its interests and still allow the plaintiffs to conduct their businesses on national park grounds. The government is under no obligation to adopt the least restrictive alternative, however. Rather, the government interest and the regulation sought to be enforced must have "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 480, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989). Here, the government has not banned commercial sightseeing activity, but is enforcing a neutral regulation sharply restricting such activity. The Court cannot conclude that the enforcement of the solicitation ban in this case is more extensive than necessary to achieve the government's interest.

### B. Fifth Amendment Claim

■ "It is fundamental that to establish a procedural due process violation, a plaintiff must show a deprivation of a protected life, liberty or property interest." *Bross v. Turnage*, 889 F.2d 1256, 1257 (2d Cir.1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570–72, 92 S.Ct. 2701, 2705–07, 33 L.Ed.2d 548 (1972)), *cert denied*, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 743 (1990). In this case, plaintiffs claim a constitutionally protected interest in being allowed to solicit business on national park grounds in contravention of a regulation outlawing such activity. The Court finds no such protected interest. Although the plaintiffs may have enjoyed for a number of years the privilege of conducting business on national park grounds, they may not acquire a liberty or property interest allowing them to do what the law specifically forbids.

In addition, even if the plaintiffs did possess a constitutionally protected interest in this case, "the Due Process Clause does not afford a greater degree of protection ... than does the First Amendment." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 521 n. 25, 101 S.Ct. 2882, 2899 n. 25, 69 L.Ed.2d 800 (1981). Because the Court holds that plaintiffs' First Amendment rights have not been violated in this case, an opposite holding regarding their Fifth Amendment rights would be incongruous when considered in the context of plaintiffs' commercial speech activities.

### C. Estoppel Claim

Plaintiffs contend that the National Park Service should be estopped from enforcing the prohibition on solicitation based upon representations made by Park Service officials during various meetings with the plaintiffs over the past several years. In particular, plaintiffs argue that Park Service officials assured them that "as long as the plaintiffs complied with all laws, the National Park Service would not act to interfere with the operation of the plaintiff's businesses." Brief for Plaintiff at 2.

It is well established that the doctrine of equitable estoppel is "rarely applicable to governmental actions." *Moran Maritime Assoc. v. United States Coast Guard*, 526 F.Supp. 335, 342 (D.D.C.1981), *aff'd*, 679 F.2d 261 (D.C.Cir.1982). As stated by the Supreme Court over seventy-five years ago, "the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917). This language is well-suited to the present case.

---

6. Plaintiff also challenges the 1989 contract renewal awarded to Tourmobile; however, this argument goes to the Park Service's compliance with the Administrative Procedure Act, not to its alleged abrogation of the First Amendment. This argument is discussed *infra* in Part II.D.

▮ Assuming that Park Service officials made the representations claimed by plaintiffs, the doctrine of equitable estoppel is nonetheless inapplicable in this situation. The National Park Service is not bound by oral agreements made by its officers when those agreements contravene clear regulatory language. Simply put, the government may not be estopped from enforcing the law, even following an extended period of no enforcement or underenforcement. *See Moran Maritime Assoc.*, 526 F.Supp. at 342 (Coast Guard not estopped from enforcing federal pilotage statute despite prior underenforcement); *Pacific Shrimp Co. v. United States*, 375 F.Supp. 1036, 1042 (W.D.Wash.1974) (government not estopped from enforcing inspection laws despite thirty-seven years of no enforcement).

As stated in *Pacific Shrimp:*

> An administrative agency charged with protecting the public interest, is not precluded from taking appropriate action nor can the principles of equitable estoppel be applied to deprive the public of the statute's protection because of mistaken *action or lack of action* on the part of public officials. Laws unenforced for a long period of time do not necessarily become inoperative....

*Pacific Shrimp Co.*, 375 F.Supp. at 1042 (emphasis added) (footnotes omitted). The Plaintiffs may well have been allowed by the National Park Service to operate their business on national park grounds for many years, but given the substantial, and undisputed, public interest in preserving national parks, the government cannot be estopped from fulfilling its duty to protect the public interest in accordance with specific regulations despite prior failure to enforce those regulations.

*D. Administrative Procedure Act Claim*

▮ The final argument raised by plaintiffs concerns alleged violations of the Administrative Procedure Act by the National Park Service in awarding a contract extension to Tourmobile in 1989.[7] The plaintiffs are not current or former permit holders, nor did they bid for the contract awarded in 1989. Plaintiffs' Reply at 16. Plaintiffs' argue that they did not bid for the 1989 contract because the government failed to provide notice to them, as interested parties, that the Tourmobile contract was up for renewal. *See* 36 C.F.R. § 51.4(a) (notice of the availability of a concession opportunity shall be "distributed to interested parties and organizations").

▮ Plaintiffs claim standing as "disappointed bidders," arguing that they held a "special relationship" with the government. Plaintiffs' Reply at 14; *see National Fed'n of Fed. Employees v. Cheney*, 883 F.2d 1038, 1052–54 (D.C.Cir.1989), *cert. denied*, 496 U.S. 936, 110 S.Ct. 3214, 110 L.Ed.2d 662 (1990). But the very case plaintiffs cite in support of their argument that they held a special relationship with the government concludes against them: "with no bid on a solicitation, it is impossible for [plaintiffs] to be within the zone of active consideration." *Id.* at 1053–54. In fact, as discussed earlier, no binding relationship ever existed between the government and the plaintiffs. Thus, the National Park Service never owed plaintiffs a duty of fairness beyond its obligation not to act in an arbitrary or capricious manner.

▮ The Park Service argues that plaintiffs were not invited to bid on the contract because they were not within the "zone of active consideration" for the award of the contract. Defendants' Memorandum at 23 (quoting *National Fed'n of Fed. Employees*, 883 F.2d at 1053). In support of their position, the defendants note that the contract with Tourmobile calls for "22 articulated Tourmobiles comprised of a tractor and trailer unit with a total seating capacity of not less than 78 passengers; and seven Super Trams comprised of a tractor unit and two trailer unit(s) with a total

---

7. In a similar vein, plaintiffs claim that they are entitled to due process protection regarding the revocation of permits, *see* 5 U.S.C. § 558(c), on the theory that by allowing plaintiffs to conduct business on national park grounds over the years, the Park Service has somehow implicitly granted them permits. This argument is clearly untenable in light of the language of 36 C.F.R. § 5.3, which prohibits all business or solicitation thereof, "except in accordance with the provisions of *a permit, contract, or other written agreement....*"

seating capacity of not less than 111 persons...." Defendants' Memorandum at 24 (internal quotations omitted). Plaintiffs' own statements support the agency's conclusion. *See* Brief for Plaintiff at 2 ("The businesses of the plaintiffs tend to be small, family owned operations.").

In reviewing procurement decisions, courts should accord substantial deference to agency actions. "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration of the procurement regulations." *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971); *accord San Antonio Gen. Maintenance, Inc. v. Abnor,* 691 F.Supp. 1462, 1468 (D.D.C.1987). Plaintiffs argue that the National Park Service should have given special notice to them in 1989 that Tourmobile's contract was up for renewal, but even on the facts alleged, the Court must conclude that the agency's decision that plaintiffs were not within the "zone of active consideration" for the award of the contract was not arbitrary or capricious.

## Conclusion

Accepting the facts alleged by the plaintiffs, the Court must nonetheless conclude that plaintiffs are not legally entitled to prevail on their claims. Accordingly, plaintiffs' motion for a preliminary injunction shall be denied and defendants' motion for summary judgment shall be granted.