90 F.3d 681
 Isamae DUNBAR, Victoria Martinez, Maria Vega, Pamela Dash,
Balbina Rodriguez, on behalf of themselves, their infant
children, and all others similarly situated, State of New
York, Michael J. Dowling, as Commissioner of the New York
State Department of Social Services, and New York State
Department of Social Services, Plaintiffs-Appellees-Cross-Appellants,
v.
Dan GLICKMAN, as Secretary of the United States Department
of Agriculture, Defendant-Appellant-Cross-Appellee,
and
Marva Livingston Hammons, as Administrator of the New York
City Human Resources Administration, and The City
of New York, Defendants.
 No. 882, Docket 95-6168.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 9, 1996.
Decided July 29, 1996.
 
 Janet E. Sabel, The Legal Aid Society, Civil Appeals & Law Reform Unit, New York City (Helaine Barnett, Attorney-in-Charge, Civil Division, Scott Rosenberg, Director of Litigation, New York City; Marshall Green, Attorney-in-Charge, Bronx Neighborhood Office, Bronx, N.Y., Ian Feldman, of counsel), Mary Fisher Bernet, Assistant Attorney General, New York City (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Daniel Smirlock, Assistant Attorney General, of counsel), for Plaintiffs-Appellees-Cross Appellants.
 Kay K. Gardiner, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Steven M. Haber, Assistant United States Attorney, of counsel), for Defendant-Appellant-Cross-Appellee.
 Before: LUMBARD, VAN GRAAFEILAND, and MINER, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 The Secretary of the United States Department of Agriculture (USDA) appeals from an order of the District Court for the Southern District of New York (Stewart, J.). The court held that the USDA violated the Administrative Procedure Act (APA), 5 U.S.C. § 553, by changing a food stamps policy without providing an explanation or following notice-and-comment rulemaking procedures. The court enjoined the policy and awarded $181 in food stamps to each of an estimated 25,000 class-action plaintiffs.
 
 
 2
 This appeal concerns special advances of public assistance (PA) benefits and when the recoupment of those advances are to be considered income. Under the Food Stamp Act of 1977, 7 U.S.C. §§ 2011-29, the USDA provides food stamps to needy applicants based on their income; the more income applicants have, the less food stamps they receive. If advances of PA benefits are not counted as income, those who receive the advances are eligible for more food stamps.
 
 
 3
 The plaintiffs[1], five residents of New York City, received both food stamps and PA benefits under state and federal welfare programs.[2] While receiving PA benefits, the plaintiffs also obtained from New York State special advances, or loans, which had to be repaid out of their future PA benefits.[3] The special advances were available only to pay the plaintiffs' rent or utility bills in order to prevent an eviction or a cut-off of utility service. The local welfare agency paid the advance directly to the landlord or utility and then kept up to 15% of the plaintiff's subsequent benefit payments until the advance was repaid. State regulations require that the advances be repaid, 18 N.Y.C.R.R. § 352.31(d)(2), and all of the plaintiffs agreed to have them repaid out of their future PA benefits.
 
 
 4
 The USDA treats the special advances as loans. By statute and regulation, loans are not counted as income when received. 7 U.S.C. § 2014(d); 7 C.F.R. § 273.9(c)(4). Therefore, the USDA treats as income the amounts that the plaintiffs have returned to the State from their subsequent PA benefits to repay the loans. Under this policy of treating the recoupment of the advances as income, all of the plaintiffs' PA benefits are counted as income only once. The district court observed that
 
 
 5
 [t]he practical effect of this counter-intuitive treatment is actually rather straightforward. A recipient's food stamp allotment does not decrease when he/she receives the advance because the advance is not considered added income when received. Conversely, the food stamp allotment does not increase when the advance is recouped in subsequent benefits....
 
 
 6
 In April 1984, the plaintiffs brought this class action to challenge the USDA's policy, arguing that the recoupment of the advances should not count as income, because the money was not available to them. Under this theory, they would collect more food stamps than others with the same total income in PA benefits who had not requested a special advance. In the alternative, the plaintiffs argued that before 1980 the USDA had not counted the recoupment of the advances as income, and it had changed its policy sometime around 1980 without explanation or notice-and-comment procedures. The USDA maintained that its policy was a reasonable one that had never changed: it consistently counted the recoupment of the advances as income.
 
 
 7
 In 1988, the court granted the USDA partial summary judgment, holding that its policy was a reasonable interpretation of the Food Stamp Act and implementing regulations. But it reserved judgment on the plaintiffs' second claim because there was a factual dispute whether the USDA had had a different policy before 1980.
 
 
 8
 On June 5, 1991, on the documentary evidence and the stipulated facts, the court found that before 1980 the USDA had had a policy of not counting the recoupment of the advances as income, and it held that the USDA had violated the APA by changing its policy without explanation or notice-and-comment procedures. In February 1995, the court enjoined the USDA from counting the recoupment of the advances as income and ordered it to provide retroactive relief: $181 in food stamps to each of the estimated 25,000 class members. We reverse.
 
 
 9
 In our opinion, the record does not support the court's finding that the USDA had a different policy before 1980. The evidence shows that the USDA has had a consistent policy on recoupments: when PA benefits are recouped to repay prior advances that were not originally counted as income, the recoupment counts as income; but when PA benefits are recouped to recover prior overpayments that originally had been counted as income, the recoupment does not count as income. This policy ensures that all PA benefits are counted as income only once.
 
 
 10
 The record does show that the City of New York followed a different policy.[4] The City excluded from income all recoupments, until New York State and the USDA discovered the City's policy and persuaded the City to change it. But the City's view cannot be imputed to the USDA.
 
 
 11
 On May 2, 1978, the USDA proposed regulations to implement the Food Stamp Act of 1977. The provisions relevant to this appeal did not change in pertinent part when the final regulation was published on October 17, 1978. The regulation, as modified, is codified at 7 C.F.R. § 273.9. Following the statute,[5] the USDA defines income broadly with only specific exclusions. The regulation explains the policy on recoupments that the USDA has consistently followed: the recoupment of a prior PA overpayment is excluded from income only if the prior payment being recouped was initially counted as income.
 
 
 12
 (b) ....
 
 
 13
 (5) Income shall not include the following:
 
 
 14
 (i) Moneys withheld from an assistance payment ... to repay a prior overpayment received from that income source, provided that the overpayment was not excludable under paragraph (c) of this section.
 
 
 15
 7 C.F.R. § 273.9(b)(5)(i). Under this rule, a recoupment is excluded from income only if the prior overpayment was originally counted as income, i.e. it "was not exclud[ed] under paragraph (c)." Loans are excluded under paragraph (c):
 
 
 16
 (c) Only the following items shall be excluded from household income ...:
 
 
 17
 ...
 
 
 18
 (4) All loans ... other than educational loans
 
 
 19
 ....
 
 
 20
 7 C.F.R. § 273.9(c)(4). Because the USDA treats the plaintiffs' special advances as loans, they are excluded from income when first received.
 
 
 21
 The Comments to the 1978 regulations discussed recoupments, but they focused on the recoupment of a different type of prior payment than the special advances at issue here. For example, if a welfare agency inadvertently gave a recipient more benefits than she was entitled to, because of a mistake or fraud, the agency reduces her subsequent benefits to recoup the "prior overpayment." Prior overpayments, unlike the special advances, were to be counted as income when first received. The Comments observed:
 
 
 22
 In the typical recoupment situation, a household may be overpaid cash benefits in another program for a period of time. The agency which issued that overpayment then lowers the amount of its current payment below the proper level to recoup the full amount of the overpayment over a period of time. Thus, an AFDC household entitled to $100 per month, which received $120 per month for five months, might then be issued only $80 per month for the next five months. Under the proposed regulations, the household should have the entire $120 considered income during those months that the household is receiving the excessive payment of $120 per month. When the household's payment is reduced to $80 per month, the Department proposes to count the household's income as $80 a month: Since the $20 recoupment had previously been counted in income, computing benefit levels based on $100 per month would result in double counting of the $20 per month.
 
 
 23
 43 Fed.Reg. 18874, 18887 (1978).
 
 
 24
 The USDA's reason for not counting as income recoupments of prior overpayments was explicit: "[s]ince the ... recoupment had previously been counted in income, computing benefit levels [to count the recouped amount] would result in double counting...." Id. By contrast, because a special advance is not counted as income when received, the USDA counts as income recoupments to repay the advance.
 
 
 25
 Before 1978, the State of New York had an entirely different policy: it counted all such recoupments as income, even if the prior payment being recouped had been counted when first received. Under this policy, prior overpayments would be counted as income both when received and when recouped, causing the recipient twice to receive decreased food stamps. In July 1978, the State changed to the USDA's policy of distinguishing whether the prior payments had already been counted and excluding from income only recoupments of payments that had already been counted. On July 6, 1978, the State explained the policy in a memorandum known as "78 ADM-49":
 
 
 26
 [T]he policy has been changed by USDA. This change will require all local agencies to exclude from income any amount recouped from public assistance grants and similar sources to pay a prior overpayment if such amount was counted or would have been counted as income.[6]
 
 
 27
 (Second emphasis added). Thus, from the very start of their implementation of the Food Stamp Act of 1977, both New York State and the USDA had declared in official documents their policy to exclude from income only recoupments of prior PA overpayments that had already been counted when received.
 
 
 28
 Sometime between November 1978 and February 1979, however, the City of New York calculated its residents' food stamp allotments with a computer program that did not distinguish between different types of recoupments. The City read ADM-49, therefore, as a change from the State's old policy of counting all recoupments of PA benefits as income to a new policy of not counting any recoupments. Between November 1978 and February 1979 when the City assessed its residents' food-stamp incomes, it did not count any recoupments, even if the original payment had not been counted as income.
 
 
 29
 Michael Davis, a New York City social-services official stated in his deposition that both New York State and the USDA's Mid-Atlantic Regional Office approved the City's computer calculation. Davis explained, however, that the City did not ask the USDA to approve the City's recoupment policy, that City and USDA officials never discussed the issue, and that he did not know whether the USDA's Regional Office would have understood the City's recoupment policy.[7] A former official in the USDA's Regional Office, Steven Robbins, deposed that he did not recall whether the Office had ever received or approved the City's calculation.
 
 
 30
 Some time in the late 1970's, the USDA's Mid-Atlantic Regional Office learned that New York City was not counting the recoupment of the special advances as income. The USDA office alerted the State to the City's practice, and on October 16, 1979, the State sent local agencies a memo to make clear that recoupments of the advances should be counted as income for food stamp purposes:
 
 
 31
 The purpose of this letter is to provide clarification in regard to Public Assistance Grant Recoupments. Whenever a PA grant is reduced to recover a prior over-payment ..., the reduced amount of the grant received by the household is counted as Food Stamp income....
 
 
 32
 However, in situations where a household is given an advance ... to prevent a utility shut-off, the advance is considered as a loan and the full amount of the advance is excluded as food stamp income. When recoupment of the advance is taken from the grant the full grant before recoupment will continue to be counted as Food Stamp income.
 
 
 33
 (Emphases added).
 
 
 34
 On January 23, 1980, after discussions between City and State officials, City official Davis wrote to the State to express the City's belief that the State was changing its policy, because the City had interpreted the State's ADM-49 memo to exclude from income all recoupments. Davis's letter also reveals that the City did not distinguish the two types of recoupments because its computer system could not do so.[8]
 
 
 35
 After a meeting of USDA, State, and City officials on February 28, 1980, a USDA official wrote to the State to advise that the City's recoupment policy violated USDA regulations:
 
 
 36
 It was agreed [at the meeting] that New York City is not in compliance with [USDA] regulations as concerns treatment of PA recoupments caused by an advance to the client. The City erroneously excludes the recouped amount as income for food stamp purposes.
 
 
 37
 Similarly, on March 3, 1980, a State official wrote to a City official that "the language of the USDA regulations was clear," requiring its policy of counting as income the recoupment of the advances.
 
 
 38
 After another meeting of USDA, State, and City officials on May 2, 1980, a State official summarized the meeting's conclusions:
 
 
 39
 There are two types of Public Assistance Grant Recoupments: one to recover a prior over-payment and one to recover an advance. In the first instance the net PA grant is considered Food Stamp income. In the second instance the gross PA grant is considered Food Stamp income. USDA and New York City do not disagree with this policy. However, New York City does not have the computer capability of distinguishing between the two types of recoupments in order to treat them differently. New York City is using net income for all recoupment cases.
 
 
 40
 Finally, on January 13, 1981, the head of the USDA Regional Office wrote a letter to the State, which stated that the USDA regulations required PA advances that were not counted as income when received to be counted when they are recouped:
 
 
 41
 Because the payment ... is excluded as income when received by the household, [the regulation] requires that recoupments be counted in the months they are recouped. There is no provision in the regulations under which the recoupments by the New York State Agency may be excluded for food stamp purposes.
 
 
 42
 Despite this documentary evidence, the district court concluded that before 1980, the USDA excluded all recoupments from income. We disagree. The record shows that both the USDA and the State, from the time they implemented the Food Stamp Act of 1977, excluded from income only recoupments of prior overpayments that had already been counted. Only the City of New York excluded all recoupments. The USDA and the State persuaded the City to change its policy as soon as they learned about it.
 
 
 43
 We find no competent evidence in the record to support the conclusion of the district court. The court determined that the State's ADM-49 memo directed the City to exclude all recoupments. We believe this conclusion is clearly erroneous. Like the USDA regulations, ADM-49 explicitly said to exclude a recoupment only "if such amount was counted or would have been counted as income." ADM-49 is consistent with the policy the USDA has followed since the 1978 implementing regulations.
 
 
 44
 The court also relied on two documents which were found in the USDA's Western and Southeast Regional Offices. These documents were undated, unsigned and contained no indication of who wrote them or why. One document, from the Western Regional Office, contains several questions and answers, only one of which apparently deals with recoupments. It states:
 
 
 45
 Can the repayment of a public assistance claim be deducted from income for food stamp purposes?
 
 
 46
 Yes. Section 273.9(b)(4)(i)[9] states that monies received from an income source which are voluntarily or involuntarily returned to repay a prior overpayment received from that source shall be excluded as income.
 
 
 47
 (Emphasis added). The USDA's Southeast Regional Office produced two paper fragments, both of which contained the hand-written notation "273.9(b)(4)." One states in its entirety:
 
 
 48
 Q. What kinds of income are not counted?
 
 
 49
 A. Monies withheld from an assistance payment to recoup a prior over-payment and child support payments which must be transferred to the State agency to maintain AFDC eligibility.
 
 
 50
 (Emphasis added). These statements, however, do not address whether the recoupments should be excluded even if the prior payments were not counted as income. Like the Comments to the proposed regulations, they focus on the "typical" recoupment situation, "prior overpayments" which had already been counted.
 
 
 51
 The other fragment from the Southeast region states:
 
 
 52
 Q. Are recoupments excluded even if the overpayment did not affect prior food stamp issuance?
 
 
 53
 A. Yes, for simplification.
 
 
 54
 There is no reason to believe that this document deals with the special advances at issue in this case.[10] Moreover, we believe that this undated, unsigned, two-sentence fragment is insufficient to show that the USDA had a policy contrary to that expressed in its regulations and in the other official documents in the record. See Smiley v. Citibank, --- U.S. ----, ----, 116 S.Ct. 1730, 1734, 135 L.Ed.2d 25 (1996);[11] Liegl v. Webb, 802 F.2d 623, 626 (2d Cir.1986); Moran Maritime Assocs. v. United States Coast Guard, 526 F.Supp. 335, 341-42 (D.D.C.1981), aff'd, 679 F.2d 261 (D.C.Cir.1982).
 
 
 55
 Finally, the court relied on City official Davis's testimony that the USDA's Regional Office approved the City's calculation that excluded all recoupments from income. All this calculation clearly shows is that the City was not counting the loans as income. Davis testified that the recoupment issue was never raised with the USDA and that they did not discuss it; nor did the USDA's Regional official recall ever approving the calculation. Moreover, even if an employee in the Regional Office did not raise an objection to the City's calculation, such an omission is inadequate to establish an official agency policy different from that contained in the agency's regulations. See Smiley; Liegl; Moran Maritime Assocs., supra.
 
 
 56
 We conclude that the record does not support the district court's findings. We reverse and vacate the order of the district court.
 
 
 
 [1]
 Isamae Dunbar, Victoria Martinez, Maria Vega, Pamela Dash and Balbina Rodriquez, on behalf of themselves, their infant children, and all others similarly situated, brought this class action. The State of New York, the New York State Department of Social Services ("NYSDSS"), and Michael Dowling, as Commissioner of NYSDSS joined the plaintiffs. The defendants are Dan Glickman, as Secretary of the USDA, Marva Livingston Hammons, as Administrator of New York City's Human Resources Administration, and the City of New York
 
 
 [2]
 The plaintiffs received benefits from the Aid to Families with Dependent Children (AFDC) program, 42 U.S.C. §§ 601 et seq., or the New York State Home Relief Program, N.Y.Soc.Serv.L. §§ 131-a et seq
 
 
 [3]
 A New York State regulation authorized local agencies to issue the advances. 18 N.Y.C.R.R. § 352.7(g)
 
 
 [4]
 The food stamp program is administered by the states under the USDA's supervision. 7 U.S.C. § 2020. In New York, the USDA's Mid-Atlantic Regional Office transmits food stamp policies to New York State's Department of Social Services, which in turn instructs local social service agencies, such as New York City's Human Resources Administration. The City is responsible for processing applications and distributing food stamps to its residents. New York City does not communicate directly with the USDA; all of the City's correspondence with the USDA goes through New York State
 
 
 [5]
 The statute states:
 Household income for purposes of the food stamp program shall include all income from whatever source excluding only ...
 ...
 (4) all loans other than educational loans ...
 7 U.S.C. § 2014(d)(4). The regulations also make clear that public assistance benefits are income. 7 C.F.R. § 273.9(b)(2)(i).
 
 
 [6]
 Along with the ADM-49 memo, the State provided a replacement page for local agencies to put in their Food Stamp manuals, which restated this policy. Under "Income Exclusions" it stated: "[a]mounts withheld from income to pay a previous overpayment, if the overpayment was or would have been counted as income at the time it was received." (Emphasis added)
 
 
 [7]
 The following colloquy occurred at Davis's deposition:
 Q: How could USDA understand all the different codes [in the computer program] if there was not some kind of translation of the codes to USDA?
 [Davis]: There was never, to my recollection, there was never a discussion of some reasons for recoupment versus other reasons for recoupment....
 ...
 Q: Do you recall having discussions with USDA about the recoupment issue and how to program it?
 [Davis]: No. No, we had many meetings, discussed the calculation, but I don't recall if that even came up.
 
 
 [8]
 Davis wrote:
 In New York City, the various types of recoupment are processed according to one procedure.... The New York City p.a. computer system cannot determine the reason for recoupment and, therefore, cannot distinguish between rent and utility advancements and other types of recoupment....
 ...
 Implementation of the policy will require a major rewriting of our computer programs, a manual review of more than 50,000 case records, and the input into the computer system of more than 50,000 input forms.
 
 
 [9]
 The relevant regulation was originally designated 7 C.F.R. § 273.9(b)(4). It was altered to (b)(5) in 1982, without substantive change. See 47 Fed.Reg. 55467 (1982)
 
 
 [10]
 Its text suggests instead that it involves a different situation, one addressed in the Comments to the regulations:
 In certain situations, the prior overpayment might not have been actually used to calculate food stamp income because the household did not apply for food stamps until after the recoupments began. However, to simplify program administration and avoid certification delays, the Department proposes the general rule that recoupments not be considered as income.
 
 
 [43]
 Fed.Reg. 18874, 18887 (1978). (Emphasis added). That the Southeast Region fragment and the Comment both focus on simplicity suggests that the fragment was addressed to the same issue as the Comment: when a household receives a PA overpayment before it applied for food stamps, which is why the overpayment "did not affect prior food stamp issuance."
 
 
 [11]
 In Smiley, a unanimous Supreme Court held that views articulated in a prior letter from an agency and in a letter from the agency's Deputy Chief Counsel were not an "official agency position," observing:
 [w]e doubt whether either of these statements was sufficient in and of itself to establish a binding agency policy--the former, because it was too informal, and the latter because it only purported to represent the position of the Deputy Chief Counsel....
 Smiley, --- U.S. at ----, 116 S.Ct. at 1734 (1996).